# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA

JOHN DOE, an infant,
by his next friend, Reelia Watson

       Plaintiff,

                                       Honorable

v

                                       Case No.

RUSSELL COUNTY SCHOOL BOARD
d/b/a RUSSELL COUNTY PUBLIC SCHOOLS;
PHILLIP HENLEY, Individually and as an
Agent of RUSSELL COUNTY SCHOOL BOARD;
KIMBERLY HOOKER, Individually and as an
Agent of RUSSELL COUNTY SCHOOL BOARD;
BOBBY GOBBLE, Individually and as an
Agent of RUSSELL COUNTY SCHOOL BOARD;
and JOHN ROES 1-10;

       Defendants.

_____

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.      On February 4, 2014, a second grade student at Lebanon Elementary School ("LES") reported to his parents that the school's head custodian, Defendant Bobby Gobble, had fondled the child's genitals underneath his pants while the two were alone in the school's custodian office. The following afternoon the boy's parent reported the assault to LES. Russell County Sheriff's Department and the Department of Social Services ("DSS") began investigating the complaint.

2.      Defendant Gobble, a 40-year-old man employed by Defendant Russell County School Board ("School Board") at LES since 2006, subsequently confessed to committing countless acts of sexual abuse against four children, including Plaintiff John Doe.

3.     Gobble began sexually abusing John Doe in 2011, when the boy was nine-years-old and in the third grade at LES, and continued abusing John for nearly two years. Gobble secluded the boy in the LES custodian office, which had a door that was always closed pursuant to Defendant Principal Henley's instruction, where Gobble fondled John's genitals. Gobble also isolated John in the LES stock room, where he performed forced oral sex on the child. Gobble arranged for John to live with him for over a year, first at Gobble's own home and later at the house of Gobble's sister, who also worked for Defendant School Board as an LES custodian. Gobble slept with John, groped John's buttocks and penis every night, and made repeated attempts to sodomize the boy. He drove John to and from school and took him on trips, some across state lines, also during which Gobble sexually abused the boy.

4.     While Defendant Gobble subjected John to a life of nearly unending sexual abuse, Russell County Public Schools ("RCPS") administrators, teachers, and staff knew Gobble engaged in egregiously inappropriate misconduct against John.

5.     Defendant Phillip Henley, Principal of LES when John was in the third grade, knew, *inter alia*, Gobble had John stay at his house and took the child on weekend trips. Defendant Henley failed to ascertain that Gobble lacked legal custody or guardianship with respect to the child, and he failed to take any action to protect John from Gobble's sexual abuse.

6.     In spring 2013, Defendant Kimberly Hooker, Principal of LES during John's fourth-grade year, learned a complaint had been filed with DSS regarding Gobble's sexual abuse against John. Although DSS determined the case was unsubstantiated, Principal Hooker – who knew Gobble spent vast amounts of money on and time with John, both during and outside of school hours – failed to undertake an independent investigation, monitor Gobble, or take any action to protect John.

2

7.     John's third grade teacher knew Gobble's then-wife was "jealous" of John, who was living with the couple, and the child was the stated reason for the couple's divorce. Another teacher knew Gobble "always had his hands on" John. An RCPS bus driver passed-on love notes and messages from Gobble to John. Other School Board employees knew Gobble slept in the same bedroom as John and was inappropriately physical with the boy during school hours. They also knew Gobble isolated himself with John on RCPS property at all times of the day and year, transported the boy to and from school in his personal vehicle, took the child on out-of-state trips, and purchased extravagant gifts for John.

8.     Defendants School Board, Henley, Hooker, and John Roes 1-10 (collectively, "School Defendants") turned a blind eye to Gobble's blatant sexual misconduct against John and other male students. They failed to take a single step to investigate reports of Gobble's inappropriate relationships with boys at LES, curtail the custodian's access to young students, prevent him from secluding male students in all parts of the school at all times of the year, or protect John and remediate the two years of sexual abuse that Gobble committed against the child. School Defendants created and fostered an environment in which Plaintiff and other male students were vulnerable and subjected to Gobble's deplorable sexual abuse.

9.     Gobble subsequently pled guilty to 48 felony counts of aggravated sexual battery and 9 felony counts of forcible sodomy against John, and additional felony counts against three other young male victims. He was sentenced to 100 years in prison for his criminal sexual misconduct. A forensic examination of Gobble's electronic devices revealed images of John Doe and hundreds of photos of nude young males.

10.     Plaintiff John Doe, by and through his next friend, Reelia Watson, seeks recovery for the significant damages he has suffered as a result of Defendants' violations of the

Educational Amendments of 1972 (Title IX), 20 U.S.C. § 1681, *et seq.*; the Fourteenth Amendment to the United States Constitution (under 42 U.S.C. § 1983); and for other federal and state laws described in this Complaint.

<strong><u>JURISDICTION AND VENUE</u></strong>

11.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this litigation involves matters of federal law, specifically claims made under the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681 et seq., and claims for deprivation of civil rights under 42 U.S.C. § 1983 and the United States Constitution.

12.     This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1343(a)(3) & (4) because this litigation involves claims for deprivation of civil rights under 42 U.S.C. § 1983.

13.     This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367, as they form part of the same case or controversy stemming from the allegations that form the basis of the federal claims in this action.

14.     Venue in this District is proper pursuant to 28 U.S.C. § 1391, as all of the relevant facts giving rise to this case and damages sustained by Plaintiff occurred in this District.

<strong><u>PARTIES</u></strong>

15.     Plaintiff John Doe was a student at LES.  He is a minor and resident of Russell County, Virginia.

16.     Reelia Watson, a discrete and competent attorney at law, is the next friend of Plaintiff John Doe pursuant to Fed. R. Civ. P. 17(c)(2) and Va. Code Ann. § 8.01-8.  Attorney Watson is truly dedicated to the best interests of John, a minor who cannot appear on his own behalf to prosecute this action.  Attorney Watson is a resident of Washington County, Virginia.

4

17.     Defendant School Board, a corporate body granted powers by state law, runs LES and RCPS.  Defendant School Board has the authority to sue or be sued under Va. Code Ann. § 22.1-71.

18.     The Commonwealth of Virginia has delegated to Defendant School Board the duties to "operate and maintain the public schools in the school division," "[s]ee that the school laws are properly explained, enforced and observed," and "take care that the [public schools in the school division] are conducted according to law."  Va. Code Ann. § 22.1-79.

19.     Defendant School Board is a recipient of federal funds within the meaning of 20 U.S.C. § 1681(a).

20.     Defendant Phillip Henley is a resident of Russell County, Virginia, and during the 2011-2012 academic year was the Principal of LES, employed by and in the course and scope of his employment with Defendant School Board.

21.     Defendant Kimberly Hooker is a resident of Russell County, Virginia, and during the 2012-2013 academic year was the Principal of LES, employed by and in the course and scope of her employment with Defendant School Board.

22.     The Virginia Board of Education's Regulations Establishing Standards for Accrediting Public Schools in Virginia state, "[t]he principal is recognized as the instructional leader of the school and is responsible for effective school management that promotes positive student achievement, a safe and secure environment in which to teach and learn, and efficient use of resources."   8 VAC 20-131-210(A).  A principal should have "the maximum authority available under law in all matters affecting the school including, but not limited to, instruction and personnel, in a manner that allows the principal to be held accountable in a fair and consistent manner for matters under his direct control."  *Id.*

23.     Defendant Gobble is a convicted sex offender currently incarcerated with the Virginia Department of Corrections.  He was employed by Defendant School Board as a custodian at LES at all times relevant hereto.

24.     Defendants John Roes 1-10 are as yet unidentified individuals who knowingly received visual depictions produced by Gobble of Plaintiff engaged in sexually explicit conduct or child pornography, and/or as yet unidentified administrators, officials, employees, agents, or persons otherwise affiliated with Defendant School Board who violated Plaintiff's Constitutional Rights and other federal and state laws, causing injury to Plaintiff.

## FACTUAL ALLEGATIONS

### *School Defendants Allowed Employee Gobble*
### *Unrestricted and Unsupervised Access to Vulnerable LES Students*

25.     From 2006 through 2014, Defendant School Board employed Defendant Gobble as a custodian at LES.  Gobble served as the head custodian for the last two years of his employment at the school.

26.     School Defendants allowed Gobble to have unsupervised and unrestricted access to the most isolated parts of LES property, including the custodian office – the door to which was always closed pursuant to Defendant Principal Henley's instruction – and the boiler and stock rooms.

27.     School Defendants allowed Gobble to have unsupervised and unrestricted access to LES at all times of the year, including before and after school, on snow days, and during the summer.

28.     School Defendants allowed Gobble to have unrestricted and unsupervised access to elementary school students, including Plaintiff.

6

29.     School Defendants permitted Defendant Gobble to remove children, including Plaintiff, from LES classrooms, often not returning the students to class for long periods of time, and sometimes not returning the students to class at all.

30.     School Defendants permitted Gobble to be alone, unmonitored, and unsupervised with Plaintiff and other children in the custodian office and other areas of LES, during and outside of standard school hours, and even when school was not in session including summers and snow days.

31.     Defendants allowed Gobble to pay or reward young male students with money and candy for helping him with custodial work at LES.

### School Defendants Failed to Provide Essential Training and Education to Administrators, Staff, Students and Parents on Sexual Abuse of Students by School Employees

32.     In January 2001, the U.S. Department of Education Office for Civil Rights ("OCR") issued *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties*, informing all U.S. schools receiving Federal financial assistance – including RCPS – that "[p]reventing and remedying sexual harassment in schools is essential to ensuring a safe environment in which students can learn." The Guidance states, among other things, schools are responsible for taking prompt and effective action to stop and prevent the recurrence of a school employee's sexual harassment of a student.

33.     In 2004, the U.S. Department of Education issued *Educator Sexual Misconduct: A Synthesis of Existing Literature*, a study that determined nearly 9.6% of all kindergarten through 12th grade students are subjected to sexual misconduct by a school employee.

7

34. In January 2006, OCR issued a Dear Colleague Letter to RCPS and other U.S. public schools reminding them of their obligations to prevent and remedy sexual harassment, including sexual harassment committed by school employees against students.

35. In January 2011, Connie Klewer, an eighth-grade teacher employed by Defendant School Board at Lebanon Middle School, was found guilty of committing four felonies and one misdemeanor against a 14-year-old RCPS student. Klewer committed sexual misconduct against the boy by, among other things, soliciting and sending him sexually explicit text messages.

36. In March 2011, the Virginia Board of Education issued *Guidelines for the Prevention of Sexual Misconduct and Abuse in Virginia Public Schools* ("Sexual Misconduct Guidelines"). The Sexual Misconduct Guidelines instruct that local Virginia school boards, like Defendant School Board, "should provide training for employees and volunteers on the prevention of [sexual] misconduct and abuse and disseminate information about relevant division policies to employees, volunteers, students, and parents."

37. Additionally, the Sexual Misconduct Guidelines state:

    a.    "School board employees and volunteers should avoid appearances of impropriety when interacting with students."

    b.    "Personal contact between adults and students must always be nonsexual, appropriate to the circumstances and unambiguous in meaning."

    c.    "Employees and volunteers should respect boundaries consistent with their roles as educators, mentors and caregivers. Violations of these boundaries include . . . "

        i.    "Unnecessarily invading a student's personal privacy;" and

        ii.    "Singling out a particular student or group of students for personal attention and friendship beyond the bounds of an appropriate educator/mentor-student relationship."

38.     The Sexual Misconduct Guidelines also state, "School board employees and volunteers have an obligation to report violations of the division's policies for preventing sexual misconduct to the principal or his or her designee or to the division superintendent.  This obligation is in addition to the statutory responsibility to report suspected abuse and neglect."

39.     On April 4, 2011, OCR sent a Dear Colleague Letter to all U.S. public schools, including RCPS, that issued a "call to action" to the nation's schools because of "deeply troubling" data regarding school-place sexual violence.  OCR reminded schools they have an independent obligation to investigate reports of sexual harassment, must designate at least one employee to coordinate and comply with Title IX responsibilities, and recommended schools provide training and education to faculty, staff, employees and students on sexual harassment and violence.

40.     Based upon information and belief, despite clear notice by the DOE, OCR and Virginia Board of Education regarding School Defendants' obligations in preventing and remedying sexual harassment, and notice of the danger posed by Defendant School Board's own employees to vulnerable students, at all times relevant hereto School Defendants failed to provide training or education to administrators, staff, students, and parents regarding school employee sexual abuse of children.

41.     Based upon information and belief, School Defendants, at all times relevant hereto, failed to provide training or education to administrators, staff, students, and parents on protecting students from sexual abuse, identifying signs of child sexual abuse, identifying grooming behaviors of sexual predators, interviewing victims and potential witnesses of child abuse, investigating reports of child sexual abuse, remediating sexual harassment and abuse, and

9

proper reporting of suspected sexual harassment or abuse to School Board administrators or employees.

42.     Based upon information and belief, School Defendants, at all times relevant hereto, failed to provide training or education to administrators, staff, students and parents on any then-existing written RCPS Policy regarding school employee sexual harassment against students.

43.     At all times relevant hereto, School Defendants had no written policies, procedures or guidelines for its employees concerning reporting child abuse and neglect to DSS.

44.     Based upon information and belief, School Defendants, at all times relevant hereto, failed to provide training to administrators and staff regarding reporting suspected child abuse to DSS.

45.     At all times relevant hereto, School Defendants, based upon information and belief, had no Title IX coordinator responsible for and/or trained in receiving, coordinating or investigating reports of sexual harassment and discrimination of students at RCPS.

### *RCPS Administrators, Teachers, and other Employees*
### *Turned a Blind Eye to Two Years of Gobble's Sexual Abuse against Plaintiff*

46.     In September 2011, Plaintiff John Doe, then nine years old, began attending third grade at LES.  The school had an Individualized Education Program for John due to his Specific Learning Disability.

47.     Defendant Gobble began sexually abusing John in the 2011-2012 academic year, and he continued his relentless assault and abuse against Plaintiff for the next two years.

48.     At all times relevant hereto, Defendant Gobble's contact, relationship, and interaction with John arose from Gobble's position as an employee of Defendant School Board. Gobble misused his authority over John as a school employee to sexually abuse the child.

10

49.     Defendant Gobble's initial sexual assaults against John occurred within the walls of LES.  Gobble isolated Plaintiff in the school custodian office, where he fondled John's genitals under the boy's clothing.  Gobble also secluded John in the LES stock room, where he performed forced fellatio on the child.  Gobbled threatened to kill or harm John and John's mother if the child told anyone about the abuse.

50.     During the 2011-2012 school year, John's grandmother had legal custody of John and his three siblings.  Gobble convinced the grandmother that John should live with him.

51.     Gobble did not have legal custody or guardianship of John.

52.     While John lived with Gobble and his wife, Gobble and John slept in a room separate from Gobble's wife.  Gobble sexually assaulted Plaintiff on a nearly nightly basis by, among other things, touching the child's buttocks and penis and attempting to sodomize him.

53.     Based upon information and belief, Gobble and his wife separated at some point during the 2011-2012 school year.  Gobble then moved with John to the home of Gobble's sister, Brenda Gobble Helbert, where he continued to live with Plaintiff for nearly a year.  During this time, Gobble slept in the same bed as John and continued to routinely sexually abuse him.

54.     During the time Gobble had John living with him at Helbert's house, Helbert also was employed by Defendant School Board as an LES custodian.

55.     Helbert knew Gobble slept in the same bedroom as John.

56.     From 2011 through 2013, Gobble drove John to and from school in his personal vehicle, during which times he groped, fondled, and sexually abused the child.

57.     From 2011 through 2013, Gobble continued sexually abusing John on RCPS property.

58.     During the 2011-2012 school year, when John was in the third grade at LES, Defendant Principal Henley knew Gobble had Plaintiff stay at his house and spent time on the weekends with the child, took John on weekend trips to Bristol (a town that falls within both the Commonwealth of Virginia and State of Tennessee), purchased dinner for the boy, and had John stay with him at LES after school hours. Defendant Henley incorrectly assumed – and never even questioned whether – Gobble was John's relative or a friend of John's family.

59.     Defendant Henley also knew Gobble had two other boys help him gather trash at LES after school hours, in the evenings when Gobble performed custodial work at the school. Gobble later confessed to having committed criminal sexual misconduct against one of those boys, SG.

60.     Defendant Henley required that Gobble keep the door to the LES custodian office closed at all times.

61.     Defendant Henley had supervisory duties and responsibilities with respect to Gobble, and Henley had the ability and duty to take corrective action to protect John and other vulnerable students.

62.     Defendant Henley took no action to supervise, monitor, or investigate Gobble's interactions with John or other male students, did not monitor Gobble's activities in the custodian office, and failed to take any action to curtail Gobble's unrestricted and unsupervised access to John.

63.     LES teacher Cecille Skeens, one of Plaintiff's third grade teachers, also knew Defendant Gobble was spending nights and weekends with John, took the child home after school, spent time after school hours at LES with the boy, took John to Gobble's farm on weekends, and bought the boy expensive gifts including an Xbox. She observed Gobble hug

12

John in the school cafeteria. Skeens took no action to prevent or curtail Gobble's access to John or to protect him from Gobble.

64. LES inclusion teacher Alicia Helton Powers, who worked in Skeens' classroom during John's third grade year, knew Defendant Gobble transported Plaintiff across state lines on a trip to Dollywood in Pigeon Forge, Tennessee. She also knew Gobble took John home with him, spent nights with the child, transported the boy in his personal vehicle to and from school, and that John was no longer riding the school bus. Powers knew Gobble purchased gifts and clothing for John, took the child to sporting events, and was with him after school and during the summers at LES. Defendant Gobble informed Powers that his wife was jealous of John and had called DSS about his living situation with the boy, and that Gobble and his wife were getting divorced because of the situation. Powers took no action to prevent or curtail Gobble's access to John or to protect him from Gobble's abuse.

65. LES teacher Angela Mitchell, who taught at LES for seven or eight years, knew Defendant Gobble had two or three boys help him pick up trash at LES, knew Gobble paid the boys or gave them candy for doing so, knew boys congregated around Gobble, and was aware unsupervised students visited Gobble's custodian office, the door to which was kept closed. Mitchell took no action to prevent or curtail Gobble's access to young male students.

66. RCPS teacher Lora Chafin, who began teaching at LES in 2005, also knew Gobble would get boys to help him empty trash cans in the evening after school and paid the boys a dollar each to do so. Chafin took no action to prevent or curtail Gobble's access to young male students.

67. During the 2012-2013 academic year, Plaintiff's fourth grade year at LES, Defendant Principal Kimberly Hooker knew Defendant Gobble spent a lot of money on John and

purchased lunch, dance tickets, yearbooks, ice cream, and snacks for the child.  She also knew Gobble spent time with John on LES property after school hours, and that he took the child to after school peanut football and little league basketball activities.  She frequently saw Gobble with Plaintiff at Lebanon High School football and basketball games.

68.     In spring 2013, DSS informed Principal Hooker a complaint had been filed regarding Gobble and John, who was ten-years-old at the time.  She sat in on DSS's interview with Gobble and John, during which they claimed nothing had happened between them.  Shortly thereafter, Hooker learned DSS determined the complaint was unsubstantiated.  However, Hooker did not follow up on the report in any way by, for example, investigating to determine whether teachers, staff, or other children had complaints or concerns about Gobble.

69.     Defendant Hooker had supervisory duties and responsibilities with respect to Gobble, and she had the ability and duty to take corrective action to protect John and other vulnerable students.  Her sole response to the report of Gobble's child abuse was to tell Gobble it would be "best" if John did not stay after school unless he was in the after school program.  She did nothing to monitor Gobble's behavior with Plaintiff or any other children or take any action to curtail Gobble's unrestricted and unsupervised access to John and other vulnerable male students.

70.     John's fourth grade teacher, Naomah McCoy, claimed Defendant Gobble always made her uncomfortable and served as a "trigger" for her.  McCoy observed Gobble single out and act obsessively and overly friendly with Plaintiff and, later, student AM.  She knew Gobble took John home with him after school, and had the child with him at LES after school hours and throughout the summer.  Gobble told McCoy his wife was troubled by John's living with them, and because of that Gobble had moved with Plaintiff to his sister's house.  She was aware

14

Gobble "always had his hands on" John and was "extremely over friendly," obsessive, inappropriate, and "touchy feely" with the boy. She saw Gobble pet John's hair and hug and touch the boy. She knew Gobble took John out of class and gave him money.

71. McCoy also observed Gobble grab, hug, and pat student AM on the head. Gobble even gave her money to pass on to AM. She observed AM become extremely uncomfortable in Gobble's presence.

72. Despite this, McCoy allowed Gobble to spend time in her classroom with students and to remove students from her classroom so that they could go to the custodian's office with Gobble. She took no action to protect Plaintiff or other students from Gobble's abuse.

73. LES fourth grade teacher Christie Clark also knew Gobble spent nights with John, and the child helped the custodian every day with trash collection and disposal at the school. Clark took no action to prevent or curtail Gobble's access to John or protect him from Gobble's abuse.

74. During summer 2013, RCPS teacher Jessica Statzer visited her classroom to prepare for the upcoming school year. As she entered the classroom, the lights were turned off. After approximately ten minutes, Statzer heard movement in the back of the room, and saw Defendant Gobble and John hidden behind numerous stacked boxes. Statzer took no action to prevent or curtail Gobble's access to John or protect him from Gobble's abuse.

75. Also during summer 2013, RCPS resource officer Kevin Lester recommended Gobble to coach a flag football team comprised of boys eight- to eleven-years-old. Timgard Martin, who coordinated the flag football league with her husband, learned from Plaintiff that he had lived with Gobble. As summer progressed, Martin became increasingly uncomfortable with Gobble's behavior. During the beginning of the 2013-2014 school year, Martin observed Gobble

15

"tore all to pieces" because John did not want to hang around him anymore, and she learned John wanted nothing to do with Gobble. Gobble soon thereafter told her he was happy because Plaintiff's little brother "had taken [John's] place."

76.     In or around July 2013, John's mother, who had regained custody of her son and ended John's sleepovers with Gobble, reduced the amount of time he was permitted to spend with Gobble.

77.     In fall 2013, John began attending middle school, and no longer attended LES.

78.     During the 2013-2014 school year, John rode the RCPS school bus to middle school.

79.     During the 2013-2014 school year, Defendant School Board employee Patsy Blevins, a bus driver for RCPS, delivered notes and messages from Defendant Gobble to John stating things like, "Bobby loves you and misses you."

80.     In November 2013, LES Principal Price began noticing problems with the school's video surveillance system, which employed cameras placed throughout the school, including one outside the LES custodian office, with monitors in the Principal's office. On at least three occasions, Price found the surveillance system unplugged upon arriving at his office in the morning.

81.     An RCPS maintenance employee investigated the problem and advised Price and Assistant Principal Jennifer Eaton that someone had flipped the switch on the power strip controlling the surveillance system, which was located in the Principal's office, shutting off the power and disabling the system. Principal Price discussed the problem with Gobble and Helbert (fellow custodian and Gobble's sister), and informed them he did not want anyone in his office

and would clean his own office.  After that point in time, there were no further problems with the security system.

82.     Although Price and Eaton suspected tampering, and considered installing a trail camera in Price's office to catch the person sabotaging the system, they did not do so.  They made no further investigation into the tampering with the surveillance system, identified no perpetrator, and took no disciplinary action against any employee.

83.     Despite RCPS administrators', teachers' and other school employees' knowledge and observations of Gobble's inappropriate behavior against John and reports of Gobble's suspected sexual abuse of the child over the course of two years, Defendants failed to investigate, take any precautions or actions to prevent Gobble from inflicting harm on John and other male students, or take any corrective or disciplinary action against Gobble.  Instead, they continued allowing Gobble unfettered and unsupervised access to John and other boys.

### *Gobble Confessed to Abusing Plaintiff, LES Student AM, and Two Other Boys*

84.     During the 2013-2014 school year, Gobble was frequently alone and unsupervised in the custodian office with first grade LES student AM, who would play games on the computer in the office.

85.     On February 4, 2014, seven-year-old AM and Gobble were alone in the LES office before school began.  Gobble grabbed AM and placed the boy on his lap.  Gobble then put his hand down the boy's pants and under the child's underwear, and groped AM's genitals. AM reported the assault to his parents that night.

86.     On February 5, 2014, AM's stepfather reported the incident to LES Principal Price.  Price contacted Superintendent Dr. Brenda Hess and told her of the report.  Hess requested that Assistant Superintendent Scotty Fletcher and Director of Emergency Management

17

and School Safety Cathy Gent investigate the complaint for the school system. School Defendants contacted DSS, interviewed Gobble, permitted Gobble to finish his work day at LES, and then placed the custodian on paid administrative leave.

87. Russell County Sheriff's Department and DSS investigated the report. On February 12, 2014, Defendant Gobble was arrested, and he confessed to serial sexual abuse of four boys, including LES students Plaintiff and AM, over the course of at least five years.

88. Plaintiff's mother learned about Gobble's confession and questioned John about Gobble. John told his mother Gobble had fondled him and performed forced oral sex on him. John also stated that he previously denied Gobble had sexually abused him because Gobble threatened to kill him and his mother if he told anyone.

89. On August 14, 2014, Gobble executed a written Plea Agreement in which he pled guilty to 48 felony counts of aggravated sexual battery and 9 felony counts of forcible sodomy against John. Gobble also pled guilty to 24 felony counts of aggravated sexual battery and 51 counts of carnal knowledge of a 13-15-year-old against his other victims, including LES student AM. Gobble was sentenced to 100 years in prison, with 30 years suspended. Gobble is currently incarcerated.

90. Law enforcement seized the computer that Gobble used at LES in the custodian office. Principal Price claimed the computer was unauthorized and it was not the practice of RCPS to allow computers to be installed in custodian offices. Law enforcement also seized the computers Gobble used at his sister's and ex-wife's homes, along with Gobble's cell phone.

91. Virginia State Police conducted a forensic examination of the electronic devices Gobble used. The examination revealed, among other things, hundreds of sexually explicit image files of unclothed, or partially unclothed, individuals; photos of and text messages to his

victims and/or possible victims; and – on the computer Gobble used at LES in the custodian office – files concerning Plaintiff, AM, and other victims.

92.     Based upon information and belief, Gobble produced visual depictions of John and other minors engaged in sexually explicit conduct and/or child pornography, and Gobble distributed these visual depictions and child pornography via the internet.

93.     Based upon information and belief, Defendants John Roes 1-10 knowingly received visual depictions produced by Gobble of Plaintiff engaged in sexually explicit conduct and/or child pornography.

94.     Since Gobble's arrest, Defendant School Board has refused to offer any counseling, assistance, or meaningful information of any kind to John and his family.

95.     John will, for the foreseeable future, need therapy for his injuries.  The great psychological and emotional harm caused to John by these events has also restricted, and will for the foreseeable future continue to restrict, his access to educational opportunities.

96.     John Doe's mother is solely responsible for payment of Plaintiff's medical expenses, and she has waived her right to recover expenses of curing, or attempting to cure, John from the great harm caused to him by these events.  John Doe's father has not paid, been assessed or charged with, or will be liable for any such expenses.

## COUNT I
### Violation of the Educational Amendments of 1972 (Title IX), 20 U.S.C. § 1681, *et seq.* (*Defendant School Board*)

97.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated herein.

98.     Defendant School Board had actual notice of Gobble's sexual misconduct against John based on, *inter alia*, reports of Gobble's sexual abuse of John at the time the abuse was

19

occurring, along with reports Gobble had Plaintiff living with him, took the child on trips, transported the boy over state lines, was separating from his wife who was "jealous" of John, transported John to and from school in his personal vehicle, purchased expensive gifts and other items for Plaintiff, removed John and young male students from class, spent time alone after school with male LES students, isolated and secluded male students including Plaintiff for extended periods of time, and attracted boys to him by offering them candy and money.

99.     Defendant School Board, by its action and inaction, created a climate whereby criminal sexual misconduct was tolerated, thus encouraging repeated misconduct and proximately causing injury to Plaintiff.

100.    Defendant School Board, through its agents, Defendants Henley and Hooker, along with John Roes 1-10, had actual knowledge of sexual assaults, exploitation, discrimination and harassment Gobble perpetrated against Plaintiff and other young LES students on school grounds during long periods of time when he used his authority as a school employee to seclude himself with them.

101.    The individuals with actual knowledge, including Defendants Henley and Hooker, had the authority and ability to investigate and take meaningful corrective action to end or prevent the sexual assaults, exploitation, discrimination and harassment, but failed to do so.

102.    The sexual abuse, exploitation, discrimination, and harassment Gobble inflicted on John was severe, pervasive, and objectively offensive, and effectively barred John's access to an educational opportunity and benefit.

103.    John suffered repeated school employee-on-student sexual assault and harassment, which is considered sex discrimination prohibited by Title IX.

104.    The sexual harassment John suffered created a hostile environment at LES.

105.    By its actions and inactions, Defendant School Board acted with deliberate indifference toward the rights of Plaintiff and other male students to a safe and secure education environment, thus materially impairing John's ability to pursue his education at RCPS in violation of the requirements of Title IX.

106.    Specifically, Defendant School Board violated Title IX by, *inter alia*:

    a.   Choosing to take no action to protect John, despite knowledge of a need to supervise, discipline, warn, or take other corrective action to prevent Gobble's discrimination and harassment against John and other male students;

    b.   Ignoring complaints regarding Gobble's suspected sexual abuse of John, and the knowledge that Gobble over a period of years regularly removed boys from class and confined them long enough to sexually abuse them, or was deliberately indifferent thereto;

    c.   Failing to conduct its own internal investigation into allegations of Gobble's sexual misconduct;

    d.   Allowing its employee Gobble to live with John, during which time he repeatedly and relentlessly sexually abused John, or was deliberately indifferent thereto;

    e.   Allowing its employee Gobble to transport John out-of-state, during which time he repeatedly and relentlessly sexually abused John, or was deliberately indifferent thereto;

    f.   Allowing its employee Gobble to transport John to and from school, instead of taking the school bus, during which time he repeatedly and relentlessly sexually abused John, or was deliberately indifferent thereto;

    g.   Allowing its employee Gobble to isolate young boys, including John, before and after school hours, and on non-school days, in secluded areas of the school, where he sexually abused them, or was deliberately indifferent thereto;

    h.   Failing to inform male students' families and other male students of the danger posed by Gobble to boys when he was repeatedly allowed to exercise control over them, remove them from classes, and confine them with him long enough to sexually abuse them, or was deliberately indifferent thereto;

    i.   Creating a climate that tolerated sexual assault, exploitation, abuse and other misconduct, and that tolerated the complete disregard of reports of sexual

misconduct by Gobble, or the unusual, dangerous conducted engaged in by Gobble over a period of years, or was deliberately indifferent thereto;

j.  Failing to provide, offer, recommend or coordinate adequate health, psychological, counseling, and academic assistance and services to John after Gobble sexually assaulted and abused him, or was deliberately indifferent thereto;

k.  Failing to develop policies and procedures to address complaints of sexual abuse of a student by a teacher or other school board employee, in violation of Va. Code Ann. § 22.1-253.13:7(A);

l.  Failing to report suspected child abuse, in violation of and as mandated by Va. Code Ann. § 63.2-1509;

m.  Failing to provide policy or training for its administrators and employees about sexual harassment and assault, sexual abuse, child abuse, or mandatory reporting;

n.  Failing to terminate or otherwise discipline School Board employees and agents identified herein for their willful disregard to John and other students' safety and rights, or was deliberately indifferent thereto; and

o.  Through other actions, inactions, and deliberate indifference.

107.  As a direct and proximate result of Defendant School Board's action, inaction, and deliberate indifference, John sustained and continues to sustain injuries for which he is entitled to be compensated, including but not limited to:

a.  Past, present, and future physical and psychological pain, suffering and impairment;

b.  Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c.  Impaired educational capacity;

d.  Attorneys' fees and costs; and

e.  Such other and further relief as this Court deems just and proper.

## COUNT II
### Violation of the Educational Amendments of 1972 (Title IX), 20 U.S.C. § 1681, *et seq.*
### Post-February 12, 2014
### (*Defendant School Board*)

108.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

109.     Defendant School Board had actual knowledge of the discrimination against John, at the very latest, on February 12, 2014, when Defendant Gobble was arrested.

110.     Defendant School Board and RCPS personnel, including Defendants John Roes 1-10, had actual knowledge and the authority to take corrective action to provide, offer, recommend, or coordinate adequate health, psychological, counseling, and academic assistance and services to Plaintiff to help minimize the harm he suffered due to the discrimination and harassment, including sexual assaults, abuse, and exploitation.  Defendant School Board chose not to do so.

111.     By action and inaction after Gobble's arrest, Defendant School Board acted with deliberate indifference to John's right to a safe and secure education environment.  Defendant School Board materially impaired John's access to educational opportunities and benefits at RCPS in violation of the requirements of Title IX, by, *inter alia*:

      a.  Failing to provide, offer, recommend, or coordinate adequate health, psychological, counseling, and academic assistance and services to John after he was sexually assaulted and abused by RCPS employee and agent Gobble; or being deliberately indifferent thereto;

      b.  Failing to terminate or otherwise discipline RCPS employees and agents identified herein for their willful disregard of the safety and rights of John and other students; or being deliberately indifferent thereto; and

      c.  Through other actions, inactions, and deliberate indifference.

23

112.     As a direct and proximate result of this misconduct and deliberate indifference, John sustained and continues to sustain injuries for which he is entitled to be compensated, including but not limited to:

      a.  Past, present, and future physical and psychological pain, suffering and impairment;

      b.  Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

      c.  Impaired educational capacity;

      d.  Attorneys' fees and costs; and

      e.  Such other and further relief as this Court deems just and proper.

**COUNT III**
**Violation of Plaintiff's Constitutional Rights, brought under 42 U.S.C. § 1983**
**Failure to Train**
(***School Defendants***)

113.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

114.     At all times relevant hereto, School Defendants were policy makers and administrators, acting under color of law, who had a duty to train, and failed to train, administrators, teachers, staff, employees, volunteers, students, and parents concerning RCPS policies on reporting known or suspected abuse of students like John Doe.

115.     At all times relevant hereto, School Defendants were policy makers and administrators who had a duty to train, and failed to train, administrators, teachers, staff, employees, volunteers, students, and parents concerning school employee sexual misconduct against students and identifying, investigating, reporting, and stopping inappropriate conduct by School Board employees like Gobble against RCPS students like John.

24

116.     At all times relevant hereto, School Defendants were policy makers and administrators who had a duty to train, and failed to train, administrators, teachers, staff, employees, volunteers, students, and parents regarding any written policies that would prevent or prohibit actions like those taken by Gobble against John.

117.     School Defendants failed to train RCPS administrators, teachers, staff, employees, volunteers, student and parents despite the plainly obvious need for training on, among other things, school employee sexual misconduct against students and identifying, investigating, reporting, and stopping inappropriate conduct like that engaged in by Gobble.

118.     School Defendants failed to adequately prohibit or discourage readily foreseeable conduct in light of the known dangers faced by young students in U.S. public schools, other School Board employees' sexual misconduct against students, and Gobble's inappropriate conduct and suspected child abuse.

119.     School Defendants' failure to train RCPS employees and agents effectively denied Plaintiff's clearly established substantive due process rights under the Fourteenth Amendment to the United States Constitution, including his right to bodily integrity, right to be free from school employee sexual abuse, and educational property rights.

120.     School Defendants failed to train RCPS employees and agents in reckless and/or callous indifference to Plaintiff's federally protected rights.

121.     As a direct and natural consequence of School Defendants' actions, inactions, and deliberate indifference to and violation of John's clearly established Constitutional rights, Plaintiff suffered, and continues to suffer, injuries including, without limitation, emotional distress, psychological trauma, and mortification.

122.     As a direct and proximate result of School Defendants' actions, inactions, deliberate indifference to, and violation of John's clearly established Constitutional rights, Plaintiff sustained and continues to sustain injuries for which he is entitled to be compensated, including but not limited to:

     a.   Past, present, and future physical and psychological pain, suffering and impairment;

     b.   Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

     c.   Impaired educational capacity;

     d.   Attorneys' fees and costs;

     e.   Punitive damages as necessary and sufficient to deter Individual Defendants Henley, Hooker, and John Roes 1-10 from engaging in the same or similar behavior in the future; and

     f.   Such other and further relief as this Court deems just and proper.

## COUNT IV
### Violation of Plaintiff's Constitutional Rights, brought under 42 U.S.C. § 1983
### Supervisory Liability
### (*Defendant Henley*)

123.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

124.     John had clearly established substantive due process rights under the Fourteenth Amendment to the United States Constitution, including his right to bodily integrity, right to be free from school employee sexual abuse, and educational property rights.

125.     Defendant Principal Henley at all relevant times was an employee of Defendant School Board, acting under color of law, who had supervisory duties and responsibilities with respect to his subordinate, Defendant School Board employee Gobble, from 2011 to 2012.

26

126.     Defendant Henley had actual knowledge and/or constructive knowledge, including knowledge he would have had if he used reasonable care or diligence, that Gobble engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Plaintiff based on, *inter alia*, the following:

a.  Gobble had John living with him;

b.  Gobble slept in the same bedroom as John;

c.  Gobble had John stay at his home overnight and on weekends;

d.  Gobble took John home with him after school;

e.  Gobble transported John to and from school in Gobble's personal vehicle;

f.  John was no longer taking the school bus to and from school;

g.  Gobble spent time after school hours at LES with John;

h.  Gobble had John with him at LES during the summer and other non-school days;

i.  Gobble took John to Gobble's farm on weekends;

j.  Gobble bought John food, clothing, and expensive gifts including an Xbox;

k.  Gobble hugged and touched John in the school cafeteria;

l.  Gobble and his wife were separating because of his wife's "jealousy" regarding John;

m.  Gobble's wife had reported Gobble's living situation and conduct with John to DSS;

n.  Gobble took John on out-of-town and out-of-state trips;

o.  Gobble had boys help him gather trash at LES;

p.  Gobble paid boys or gave them candy for helping him pick up trash;

q.  Gobble removed students from class, spent unsupervised time with them, took them to remote parts of LES including the custodian office, and often did not return students to class;

27

r.  Gobble had no legal custody or guardianship of John;

s.  Gobble was alone with young students in the custodian office before and after school; and

t.  Gobble had an unauthorized computer in the custodian office, and he allowed students to play games on the computer.

127.  Defendant Henley's response to this actual and constructive knowledge was so inadequate as to show deliberate indifference to or tacit authorization of Gobble's offensive misconduct against Plaintiff.

128.  Defendant Henley's response to this actual and constructive knowledge exhibited reckless and/or callous indifference to John's federally protected rights.

129.  Defendant Henley took no action to supervise, monitor, or investigate Gobble's interactions with John or male students, did not monitor Gobble's activities in the custodian office or any other location at LES, failed to take any action to curtail Gobble's unrestricted and unsupervised access to Plaintiff, and failed to investigate Gobble's familial relation – or lack thereof – to John.

130.  As a direct and natural consequence of Defendant Henley's actions, inactions, and deliberate indifference to and violation of John's clearly established Constitutional rights, Plaintiff suffered, and continues to suffer, injuries including, without limitation, emotional distress, and psychological trauma.

131.  As a direct and proximate result of Defendant Henley's actions, inactions, deliberate indifference to, and violation of John's clearly established Constitutional rights, Plaintiff sustained and continues to sustain injuries for which he is entitled to be compensated, including but not limited to:

    a. Past, present, and future physical and psychological pain, suffering and impairment;

    b. Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

    c. Impaired educational capacity;

    d. Attorneys' fees and costs;

    e. Punitive damages as necessary and sufficient to deter Defendant from engaging in the same or similar behavior in the future; and

    f. Such other and further relief as this Court deems just and proper.

**COUNT V**
**Violation of Plaintiff's Constitutional Rights, brought under 42 U.S.C. § 1983**
**Supervisory Liability**
**(*Defendant Hooker*)**

132. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

133. John had clearly established substantive due process rights under the Fourteenth Amendment to the United States Constitution, including his right to bodily integrity, right to be free from school employee sexual abuse, and educational property rights.

134. Defendant Principal Hooker at all relevant times was an employee of Defendant School Board, acting under color of law, who had supervisory duties and responsibilities with respect to her subordinate, Defendant School Board employee Gobble, from 2012 to 2013.

135. Defendant Hooker had actual knowledge and/or constructive knowledge, including knowledge she would have had if she used reasonable care or diligence, that Gobble engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Plaintiff based on, *inter alia*, the following:

    a. Gobble had John living with him;

    b. Gobble slept in the same bedroom as John;

29

c. Gobble singled out, acted obsessively regarding, and was always touching John at school;

d. Gobble grabbed, hugged, and patted student AM at school, and made AM very uncomfortable;

e. Gobble had been alone with John in a RCPS darkened classroom, behind boxes, during the summer;

f. Gobble had John stay at his home overnight and on weekends;

g. Gobble took John home with him after school;

h. Gobble transported John to and from school in Gobble's personal vehicle;

i. John was no longer taking the school bus to and from school;

j. Gobble spent time after school hours at LES with John;

k. Gobble had John with him at LES during the summer and other non-school days;

l. Gobble took John to after school athletic activities;

m. Gobble took John to Gobble's farm on weekends;

n. Gobble bought John food, clothing, and expensive gifts including an Xbox;

o. Gobble hugged and touched John in the school cafeteria;

p. Gobble and his wife were separating because of his wife's "jealousy" regarding John;

q. Gobble's wife had reported Gobble's living situation and misconduct with John to DSS;

r. DSS subsequently received another report of Gobble's sexual abuse of John;

s. Gobble took John on out-of-town and out-of-state trips;

t. Gobble had boys help him gather trash at LES after school hours, in the evenings;

u. Gobble paid boys or gave them candy for helping him pick up trash;

v. Gobble removed students from class, spent unsupervised time with them, took them to remote parts of LES including the custodian office, and often did not return students to class;

w. Gobble had no legal custody or guardianship of John;

x. Gobble was alone with young students in the custodian office before and after school; and

y. Gobble had an unauthorized computer in the custodian office, and he allowed students to play games on the computer.

136. Defendant Hooker's response to this actual and constructive knowledge was so inadequate as to show deliberate indifference to or tacit authorization of Gobble's offensive misconduct against John.

137. Defendant Henley's response to this actual and constructive knowledge exhibited reckless and/or callous indifference to Plaintiff's federally protected rights.

138. Defendant Hooker took no action to supervise, monitor, or investigate Gobble's interactions with John or male students, did not monitor Gobble's activities in the custodian office or any other location at LES, failed to take any action to curtail Gobble's unrestricted and unsupervised access to John, and failed to investigate reports of Gobble's abuse of Plaintiff.

139. As a direct and natural consequence of Defendant Hooker's actions, inactions, and deliberate indifference to and violation of John's clearly established Constitutional rights, John suffered, and continues to suffer, injuries including, without limitation, emotional distress, psychological trauma, and mortification.

140. As a direct and proximate result of Defendant Hooker's actions, inactions, deliberate indifference to, and violation of Plaintiff's clearly established Constitutional rights, John sustained and continues to sustain injuries for which he is entitled to be compensated, including but not limited to:

Case 1:16-cv-00045-JPJ-PMS   Document 1   Filed 12/08/16   Page 31 of 50   Pageid#: 31

    a. Past, present, and future physical and psychological pain, suffering and impairment;

    b. Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

    c. Impaired educational capacity;

    d. Attorneys' fees and costs;

    e. Punitive damages as necessary and sufficient to deter Defendant from engaging in the same or similar behavior in the future; and

    f. Such other and further relief as this Court deems just and proper.

**COUNT VI**
**Violation of Plaintiff's Constitutional Rights, brought under 42 U.S.C. § 1983**
**Special Relationship**
(***School Defendants***)

141. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

142. Defendants Henley, Hooker, and John Roes 1-10 were at all relevant times employees of Defendant School Board, acting under the color of law, empowered and required by the Commonwealth of Virginia to, among other things, ensure an educational atmosphere conducive to learning, free of disruption, and free of threat to person.

143. School Defendants created a danger through their adoption and perpetuation of a practice and *de facto* policy that permitted Gobble, under color of law, to remove preadolescent school boys, including John, from regular school activities and restrain their liberty through false imprisonment and seclusion in isolated areas of LES.

144. When Gobble removed John and other preadolescent victims from regular activities and falsely imprisoned them under color of law, Gobble was in custody and complete control of them.

32

145.    This practice and *de facto* policy rendered John and other preadolescent victims unable to care for themselves.

146.    The custody and control Gobble was permitted to exercise over John and other victims by virtue of the practice and *de facto* policy adopted and perpetuated by School Defendants created a special relationship whereby School Defendants were required to protect John and provide for his basic human needs and safety.

147.    School Defendants witnessed or otherwise had actual and/or constructive knowledge of Gobble's ongoing deprivation of Plaintiff's clearly established constitutionally protected property interests in education benefits and right to bodily integrity.

148.    School Defendants deliberately failed to provide for John and the other victims' basic human needs by adopting and perpetuating practices and *de facto* policies that permitted Gobble to remove John from school curriculum activities, thus failing to provide a safe environment for educational services, effectively denying him access to educational services provided by LES, and unlawfully depriving him of his educational rights and right to bodily integrity.

149.    School Defendants' acts constitute a disregard for, and deliberate indifference to, Plaintiff's well-being and his constitutionally protected property interests in educational benefits and right to bodily integrity under the Fourteenth Amendment to the United States Constitution.

150.    School Defendants' acts constituted reckless and/or callous indifference to John's federally protected rights.

151.    School Defendants created a dangerous situation for John and other students through their policies, practices, customs and regulations of disregarding reported, or otherwise known, situations of inappropriate conduct by Gobble against students, including John.

152.     School Defendants' denial of John's educational rights and right to bodily
integrity violated his substantive due process rights under the Fourteenth Amendment to the
United States Constitution, and directly and proximately caused great injury and damage to these
rights and liberty interests, for which Plaintiff is entitled to compensatory and punitive damages.

153.     As a direct and proximate result of such misconduct and deliberate indifference,
John sustained and continues to sustain, injuries for which he is entitled to be compensated,
including but not limited to:

   a.   Past, present, and future physical and psychological pain, suffering and
        impairment;

   b.   Medical bills, counseling, and other costs and expenses for past and future
        medical and psychological care;

   c.   Impaired educational capacity;

   d.   Attorneys' fees and costs;

   e.   Punitive damages as necessary and sufficient to deter Individual Defendants
        from engaging in the same or similar behavior in the future; and

   f.   Such other and further relief as this Court deems just and proper.

**COUNT VII**
**Violation of Plaintiff's Constitutional Rights, brought under 42 U.S.C. § 1983**
**State-Created Danger**
**(*School Defendants*)**

154.     Plaintiff incorporates all preceding paragraphs into this Count by reference as
though fully restated herein.

155.     School Defendants' practice and *de facto* policy of allowing employees like
Gobble free reign to excuse preadolescent children from regular school activities and falsely
imprison, seclude, and confine them with him in rooms where he could sexually abuse them
created a danger for John and other LES students.

34

156.    This practice and *de facto* policy directly created the danger of improper conduct, including sexual abuse, which danger was realized by John and Gobble's other preadolescent victims.

157.    School Defendants' practice and *de facto* policy demonstrated reckless and/or callous indifference to Plaintiff's federally protected rights.

158.    School Defendants' practice and *de facto* policy demonstrated disregard for, and deliberate indifference to, John's well-being and his clearly established constitutionally protected educational rights and right to bodily integrity under the Fourteenth Amendment to United States Constitution.

159.    School Defendants' denial of Plaintiff's educational rights and right to bodily integrity violated his clearly established substantive due process rights under the Fourteenth Amendment to the United States Constitution, and directly and proximately caused great injury and damage to these rights and liberty interests, for which John is entitled to compensatory and punitive damages.

160.    As a direct and proximate result of such misconduct and deliberate indifference, John sustained and continues to sustain injuries for which he is entitled to be compensated, including but not limited to:

    a.    Past, present, and future physical and psychological pain, suffering and impairment;

    b.    Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

    c.    Impaired educational capacity;

    d.    Attorneys' fees and costs;

    e.    Punitive damages as necessary and sufficient to deter Individual Defendants from engaging in the same or similar behavior in the future; and

f.   Such other and further relief as this Court deems just and proper.

## COUNT VIII
### Violation of 18 U.S.C. § 2255
### (*John Roes 1-10*)

161.   Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

162.   Based upon information and belief, Gobble produced visual depictions of Plaintiff in sexually explicit conduct and/or child pornography, and Gobble distributed these visual depictions and child pornography via the internet in interstate commerce.

163.   Based upon information and belief, Defendants John Roes 1-10 knowingly received and/or distributed visual depictions produced by Gobble of Plaintiff engaged in sexually explicit conduct and/or child pornography, in violation of 18 U.S.C. §§ 2252 and 2252A.

164.   As a direct and proximate result of Defendants John Roes' actions, Plaintiff sustained and continues to sustain injuries for which he is entitled to be compensated pursuant to 18 U.S.C. § 2255, including but not limited to:

a.   Past, present, and future physical and psychological pain, suffering and impairment;

b.   Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c.   Attorneys' fees and costs;

d.   Punitive damages as necessary and sufficient to deter Defendants John Roes 1-10 from engaging in the same or similar behavior in the future; and

e.   Such other and further relief as this Court deems just and proper.

## COUNT IX
### Negligence *Per Se* – Violation of Va. Code Ann. §§ 16.1-288 and 18.2-371
### (*Defendants Gobble, Henley, Hooker and John Roes 1-10*)

165.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

166.     Va. Code Ann. § 18.2-371 states, "Any person 18 years of age or older . . . who (i) willfully contributes to, encourages, or causes any act, omission, or condition that renders a child delinquent, in need of services, in need of supervision, or abused or neglected as defined in § 16.1-228 . . . is guilty of a Class 1 misdemeanor."

167.     Va. Code Ann. § 16.1-228 defines "child in need of services" as "a child whose . . . condition presents or results in a serious threat to the well-being and physical safety of the child."

168.     Va. Code Ann. § 16.1-228 defines "child in need of supervision" as "[a] child, while subject to compulsory school attendance, is habitually and without justification absent from school."

169.     Va. Code Ann. § 16.1-228 defines "abused or neglected child" as any child "[w]hose parents or other person responsible for his care creates or inflicts . . . upon such child a physical or mental injury by other than accidental means."

170.     The above-referenced statutes were enacted for public safety, and to maintain and ensure the safety of school children in the Commonwealth of Virginia.

171.     Plaintiff, a child, belongs to the class of persons for whose benefit the above-referenced statutes were enacted, and the harm he suffered from Gobble's sexual abuse was the type against which the statutes were designed to protect.

172.     Defendant Gobble violated Va. Code § 18.2-371 by willfully causing acts and conditions that rendered John abused and neglected, in need of services, and in need of supervision.

173.     Defendants Henley, Hooker and John Roes 1-10 violated Va. Code Ann. § 18.2-371 by willfully causing a condition through their actions and omissions that rendered Plaintiff abused and neglected by Gobble, in need of services, and in need of supervision.

174.     Defendants Gobble, Henley, Hooker and John Roes 1-10 violated a statutory standard of conduct designed to protect children and students from harm.

175.     Defendants Henley, Hooker and John Roes 1-10 violated Va. Code Ann. § 18.2-371 by failing to curtail Gobble's unsupervised and unrestricted in-school access to Plaintiff, and failing to investigate or determine Gobble's familial, custodial, or guardian relationship to student John, despite being aware of, *inter alia*, the following:

      a.   Gobble had John living with him;

      b.   Gobble had John stay at his home overnight and on weekends;

      c.   Gobble took John home with him after school;

      d.   Gobble transported John to and from school in Gobble's personal vehicle;

      e.   John was no longer taking the school bus to and from school;

      f.   Gobble spent time after school hours at LES with John;

      g.   Gobble had John with him at LES during the summer and other non-school days;

      h.   Gobble took John to after school athletic activities;

      i.   Gobble took John to Gobble's farm on weekends;

      j.   Gobble bought John food, clothing, and expensive gifts including an Xbox;

      k.   Gobble hugged and touched John in the school cafeteria;

38

l. Gobble and his wife were separating because of his wife's "jealousy" regarding John;

m. Gobble's wife had reported Gobble's living situation and misconduct with John to DSS;

n. DSS subsequently received another report of Gobble's sexual abuse of John;

o. Gobble took John on out-of-town and out-of-state trips; and

p. Gobble frequently removed John from class and took him to remote parts of LES including the custodian office.

176. Defendants Gobble, Henley, Hooker, and John Roes' actions and inactions were taken in conscious disregard of Plaintiff's rights and/or with reckless indifference to the consequences they were aware, based on their knowledge of existing circumstances and conditions, would probably result from their conduct and cause injury to Plaintiff John Doe.

177. The foregoing acts of negligence *per se* directly and proximately caused Plaintiff John Doe to suffer serious, disabling and painful injuries which are or may be permanent; to suffer physical pain, discomfort, and mental anguish, and these will continue in the future; he has suffered disfigurement and/or deformity, humiliation and/or embarrassment, inconvenience and this will continue into the future; he has incurred expenses for doctors and related medical and occupational care, and in the future he will continue to incur such expenses in an effort to be cured and healed; and in the future he will or may continue to lose time, income and earning capacity as well as other benefits from his work, employment or chosen occupation; and they have caused him to be unable to perform all of his activities of daily living and enjoyment, or to enjoy the normal activities of life, and will or may continue to cause him to be unable to perform such activities in the future.

**COUNT X**
**Negligence *Per Se* – Violation of Va. Code Ann. § 63.2-1509**
**Failure to Report Child Sexual Abuse**
(*Defendants Henley, Hooker and John Roes 1-10*)

178. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

179. Defendant School Board's employees, including Defendants Henley, Hooker, and John Roes 1-10, were at all times relevant hereto mandatory reporters pursuant to Va. Code Ann. § 63.2-1509(A)(5).

180. As mandatory reporters, each one of Defendant School Board's employees, including Defendants Henley, Hooker, and John Roes 1-10, had the statutory duty to make an immediate report any time he or she had even a mere suspicion that Plaintiff was an abused or neglected child.

181. Va. Code Ann. § 63.2-1509(A) states in pertinent part:

> The following persons who, in their professional or official capacity, have reason to suspect a child is an abused or neglected child, shall report the matter immediately to the local department of the county or city wherein the child resides or wherein the abuse or neglect is believed to have occurred or to the Department's toll-free child abuse and neglect hotline.

> 5. Any teacher or other person employed in a public or private school, kindergarten or nursery school;

182. Va. Code Ann. § 63.2-1509 declares the public policy of Virginia, and the purpose of the statutory scheme, is to protect children such as Plaintiff.

183. Minor Plaintiff John Doe is a member of the class of persons Va. Code Ann. § 63.2-1509 was enacted to protect, and the injuries he suffered are of the sort the statute was enacted to prevent.

184.     Defendant School Board's employees, including Defendants Henley, Hooker, and John Roes 1-10, did not report to DSS that he or she had reason to suspect that Plaintiff was an abused or neglected child, in violation of Va. Code Ann. § 63.2-1509.

185.     Defendants Henley, Hooker and John Roes 1-10 violated a statutory standard of conduct designed to protect children and students from harm.

186.     Defendants Henley, Hooker, and John Roes' actions and inactions were taken in conscious disregard of Plaintiff's rights and/or with reckless indifference to the consequences they were aware, based on their knowledge of existing circumstances and conditions, would probably result from their conduct and cause injury to Plaintiff John Doe.

187.     The foregoing acts of negligence *per se* directly and proximately caused Plaintiff John Doe to suffer serious, disabling and painful injuries which are or may be permanent; to suffer physical pain, discomfort, and mental anguish, and these will continue in the future; he has suffered disfigurement and/or deformity, humiliation and/or embarrassment, inconvenience and this will continue into the future; he has incurred expenses for doctors and related medical and occupational care, and in the future he will continue to incur such expenses in an effort to be cured and healed; and in the future he will or may continue to lose time, income and earning capacity as well as other benefits from his work, employment or chosen occupation; and they have caused him to be unable to perform all of his activities of daily living and enjoyment, or to enjoy the normal activities of life, and will or may continue to cause him to be unable to perform such activities in the future.

## COUNT XI
### Gross Negligence
### (*Defendants Henley, Hooker and John Roes 1-10*)

188.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

189. Defendants Henley, Hooker, and John Roes 1-10 had a duty to supervise school children and ensure that students, like Plaintiff, have an education in an atmosphere conducive to learning, free of disruption, and free of threat to person.

190. Defendants Henley, Hooker, and John Roes 1-10 failed to discharge their duties as a reasonable prudent person would under the circumstances.

191. Defendants Henley, Hooker, and John Roes 1-10's cumulative acts of utter disregard of prudence, lack of even scant care, and heedless and palpable violation of their duties to Plaintiff and other students amounted to complete neglect of the safety of Plaintiff.

192. Rather than creating an environment in which Gobble's sexual abuse against, and grooming of, vulnerable male students could not proceed unnoticed and unaddressed, Defendants Henley, Hooker, and John Roes 1-10 created an environment in which the sexual abuse grooming process could and did flourish, in that no fewer than two students, including Plaintiff, were sexually abused by School Board employee Gobble, whose behavior toward Plaintiff was observed, known to, and not challenged by School Board employees.

193. Defendants Henley, Hooker, and John Roes 1-10 failed to report, address, correct or discipline Gobble for fraternizing with Plaintiff in an intimate or improper manner, in violation of School Board policy and common sense.

194. Defendants Henley, Hooker, and John Roes' actions and inactions were taken in conscious disregard of Plaintiff's rights and/or with reckless indifference to the consequences they were aware, based on their knowledge of existing circumstances and conditions, would probably result from their conduct and cause injury to Plaintiff John Doe.

195.     Defendants Henley, Hooker, and John Roes 1-10 were deliberately indifferent to the dangers presented to Plaintiff and other students, and the injuries suffered by Plaintiff, and breached their duties to him by their failure to:

   a.   Discipline Gobble for his grooming behavior toward John and repeated and continual violations of proper protocol when with students, including John;

   b.   Follow the *Guidelines for the Prevention of Sexual Misconduct and Abuse in Virginia Public Schools* or any other set of protocols or guidelines for sexual abuse prevention;

   c.   Properly train School Board employees in guidelines for the prevention of sexual abuse and misconduct;

   d.   Properly train School Board employees in their mandatory reporting duties;

   e.   Pay attention to the many warning signs of Gobble's intended and active harm to John;

   f.   Review and investigate the numerous indications of Gobble's intended and active harm of John; and

   g.   Report, protect and intervene on John's behalf in a timely manner.

196.     Defendants Henley, Hooker, and John Roes 1-10 were deliberately indifferent to Gobble's misconduct and the possibility of sexual misconduct toward LES students, including Plaintiff.

197.     Defendants Henley, Hooker, and John Roes 1-10 acted wantonly, and wantonly omitted actions with regard to the rights of the minor child Plaintiff.

198.     Defendants Henley, Hooker, and John Roes 1-10 acted and omitted actions in a culpable manner regarding the rights of the minor child Plaintiff.

199.     Defendants Henley, Hooker, and John Roes 1-10 were grossly negligent and deliberately indifferent to the rights of the minor child Plaintiff to be free from the damages caused to him by Gobble.

200.    Defendants Henley, Hooker, and John Roes 1-10's cumulative actions and omissions in regard to the rights of Plaintiff and other minor students revealed the want of even scant care, and amount to the absence of even slight diligence.

201.    Each of these School Board employees could have reasonably foreseen that they would need to take affirmative action to protect Plaintiff and other minor students from harm and serious bodily injury.

202.    Defendant Gobble, groomed Plaintiff for sexual contact and his grooming behavior was classic, clear and obvious.

203.    As a result of the gross negligence of Defendants Henley, Hooker, and John Roes 1-10, Plaintiff suffered physical and psychological injury, shame, humiliation, embarrassment, indignity to his feelings, and financial loss.

204.    The foregoing acts of gross negligence directly and proximately caused Plaintiff John Doe to suffer serious, disabling and painful injuries which are or may be permanent; to suffer physical pain, discomfort, and mental anguish, and these will continue in the future; he has suffered disfigurement and/or deformity, humiliation and/or embarrassment, inconvenience and this will continue into the future; he has incurred expenses for doctors and related medical and occupational care, and in the future he will continue to incur such expenses in an effort to be cured and healed; and in the future he will or may continue to lose time, income and earning capacity as well as other benefits from his work, employment or chosen occupation; and they have caused him to be unable to perform all of his activities of daily living and enjoyment, or to enjoy the normal activities of life, and will or may continue to cause him to be unable to perform such activities in the future.

**Assault**
(*Defendants Gobble and School Board*)

205.    Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

206.    Defendant Gobble pled guilty to 48 felony counts of aggravated sexual battery and 9 felony counts of forcible sodomy against Plaintiff.

207.    Defendant Gobble threatened Plaintiff and/or his mother with physical harm if Plaintiff reported Gobble's sexual abuse to anyone.

208.    Defendant Gobble performed countless acts intended to cause harmful or offensive contact with Plaintiff and/or Plaintiff's apprehension of such conduct that created in the boy's mind a reasonable apprehension of imminent battery.

209.    Defendant School Board is directly and vicariously liable for Defendant Gobble's assault against Plaintiff under the doctrine of *respondeat superior*.

210.    Defendant Gobble was employed as a custodian at LES by Defendant School Board when he assaulted Plaintiff at LES, the place of Gobble's employment, during Gobble's work hours at LES.

211.    Defendant Gobble assaulted Plaintiff at LES while Gobble was performing custodial services within the ordinary course of his employment with Defendant School Board.

212.    Defendant Gobble misused his duties and authority as a school employee over Plaintiff to commit assault against Plaintiff.

213.    As a direct and natural consequence of Gobble's assault against Plaintiff, Plaintiff suffered injuries including, without limitation, emotional distress, psychological trauma, and mortification.

214.     Defendants Gobble's actions were taken in conscious disregard of Plaintiff's rights and/or with reckless indifference to the consequences he was aware, based on his knowledge of existing circumstances and conditions, would probably result from his conduct and cause injury to Plaintiff John Doe.

215.     Defendants Gobble's assault, for which Defendant School Board is vicariously liable, directly and proximately caused Plaintiff John Doe to suffer serious, disabling and painful injuries which are or may be permanent; to suffer physical pain, discomfort, and mental anguish, and these will continue in the future; he has suffered disfigurement and/or deformity, humiliation and/or embarrassment, inconvenience and this will continue into the future; he has incurred expenses for doctors and related medical and occupational care, and in the future he will continue to incur such expenses in an effort to be cured and healed; and in the future he will or may continue to lose time, income and earning capacity as well as other benefits from his work, employment or chosen occupation; and they have caused him to be unable to perform all of his activities of daily living and enjoyment, or to enjoy the normal activities of life, and will or may continue to cause him to be unable to perform such activities in the future.

## COUNT XIII
### Battery
### (*Defendants Gobble and School Board*)

216.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

217.     Defendant Gobble pled guilty to 48 felony counts of aggravated sexual battery and 9 felony counts of forcible sodomy against Plaintiff.

218.     Gobble engaged in countless acts of unwanted touching against Plaintiff. Plaintiff did not – and could not legally – consent to the unwanted touching, and the touching was not otherwise excused or justified.

46

219.    As a direct and natural consequence of Gobble's battery against Plaintiff, he suffered injuries including, without limitation, emotional distress, psychological trauma, and mortification.

220.    Defendant School Board is directly and vicariously liable for Defendant Gobble's battery against Plaintiff under the doctrine of *respondeat superior*.

221.    Defendant Gobble was employed as a custodian at LES by Defendant School Board when he battered Plaintiff at LES, the place of Gobble's employment, during Gobble's work hours at LES.

222.    Defendant Gobble battered Plaintiff at LES while Gobble was performing custodial services within the ordinary course of his employment with Defendant School Board.

223.    Defendant Gobble misused his duties and authority as a school employee over Plaintiff to commit battery against Plaintiff.

224.    Defendants Gobble's actions were taken in conscious disregard of Plaintiff's rights and/or with reckless indifference to the consequences he was aware, based on his knowledge of existing circumstances and conditions, would probably result from his conduct and cause injury to Plaintiff John Doe.

225.    Defendants Gobble's battery, for which Defendant School Board is vicariously liable, directly and proximately caused Plaintiff John Doe to suffer serious, disabling and painful injuries which are or may be permanent; to suffer physical pain, discomfort, and mental anguish, and these will continue in the future; he has suffered disfigurement and/or deformity, humiliation and/or embarrassment, inconvenience and this will continue into the future; he has incurred expenses for doctors and related medical and occupational care, and in the future he will continue to incur such expenses in an effort to be cured and healed; and in the future he will or

may continue to lose time, income and earning capacity as well as other benefits from his work, employment or chosen occupation; and they have caused him to be unable to perform all of his activities of daily living and enjoyment, or to enjoy the normal activities of life, and will or may continue to cause him to be unable to perform such activities in the future.

## COUNT XIV
## Intentional Infliction of Emotional Distress
### (*Defendants Gobble and School Board*)

226.    Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

227.    Gobble pled guilty to 48 felony counts of aggravated sexual battery and 9 felony counts of forcible sodomy against Plaintiff.

228.    Defendant Gobble's criminal sexual misconduct against Plaintiff was outrageous, atrocious, and intolerable, and so extreme in degree that it went beyond all possible bounds of decency.  Gobble's sexual misconduct against Plaintiff is utterly intolerable in a civilized community.

229.    Defendant Gobble's sexual misconduct against Plaintiff has caused him to suffer extreme and severe emotional distress, including but not limited to fright, horror, grief, shame, humiliation, and anger, so extreme that no reasonable person could be expected to endure it.

230.    As a direct and natural consequence of Gobble's intentional infliction of emotional distress against Plaintiff, he suffered injuries including, without limitation, emotional distress, psychological trauma, and mortification.

231.    Defendant School Board is directly and vicariously liable for Defendant Gobble's intentional infliction of emotional distress against Plaintiff under the doctrine of *respondeat superior*.

48

232.     Defendant Gobble was employed as a custodian at LES by Defendant School Board when he intentionally inflicted emotional distress upon Plaintiff at LES, the place of Gobble's employment, during Gobble's work hours at LES.

233.     Defendant Gobble intentionally inflicted emotional distress upon Plaintiff at LES while Gobble was performing custodial services within the ordinary course of his employment with Defendant School Board.

234.     Defendant Gobble misused his duties and authority as a school employee over Plaintiff to commit intentional infliction of emotional distress against Plaintiff.

235.     Defendants Gobble's actions were taken in conscious disregard of Plaintiff's rights and/or with reckless indifference to the consequences he was aware, based on his knowledge of existing circumstances and conditions, would probably result from his conduct and cause injury to Plaintiff John Doe.

236.     Defendants Gobble's intentional infliction of emotional distress, for which Defendant School Board is vicariously liable, directly and proximately caused Plaintiff John Doe to suffer serious, disabling and painful injuries which are or may be permanent; to suffer physical pain, discomfort, and mental anguish, and these will continue in the future; he has suffered disfigurement and/or deformity, humiliation and/or embarrassment, inconvenience and this will continue into the future; he has incurred expenses for doctors and related medical and occupational care, and in the future he will continue to incur such expenses in an effort to be cured and healed; and in the future he will or may continue to lose time, income and earning capacity as well as other benefits from his work, employment or chosen occupation; and they have caused him to be unable to perform all of his activities of daily living and enjoyment, or to

enjoy the normal activities of life, and will or may continue to cause him to be unable to perform such activities in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff John Doe, by and through his next friend Reelia Watson, prays the Court for judgment against Defendants Russell County School Board, Phillip Henley, Kimberly Hooker, Bobby Gobble, and John Roes 1-10, jointly and severally, for an amount of no less than $10,000,000.00 for compensatory and punitive damages, together with costs of this suit, legal interest, reasonable attorney's fees and such other relief as the Court may deem just and proper under the circumstances.

## **JURY DEMAND**

Plaintiff demands trial by jury.

**THE THOMSON LAW FIRM, PLLC**

Dated: 12/08/2016          By:     /s/ Paul R. Thomson, III
                                        Paul R. Thomson, III
                                        Attorneys for Plaintiff
                                        2721 Brambleton Avenue, SW
                                        Roanoke, Virginia 24015
                                        (540) 777-4900
                                        Fax: (540) 772-0578
                                        paul@roanokeinjurylawyer.com

**THE FIERBERG NATIONAL LAW GROUP, PLLC**

Dated: 12/08/2016          By:     /s/ Monica H. Beck
                                        Douglas E. Fierberg
                                        Monica H. Beck
                                        Attorneys for Plaintiff
                                        105 E. Philip St., P.O. Box 121
                                        Lake Leelanau, MI 49653
                                        (231) 256-7068
                                        Fax: (231) 256-7069
                                        (Pro Hac Vice Admission Pending)