**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ABINGDON DIVISION**

JOHN DOE, an infant,
by his next friend, Reelia Watson

        Plaintiff,

                                                     Judge James P. Jones

v                                                Magistrate Judge Pamela M. Sargent

RUSSELL COUNTY SCHOOL BOARD          Case No. 1:16cv-00045
d/b/a RUSSELL COUNTY PUBLIC SCHOOLS;
PHILLIP HENLEY, Individually and as an
Agent of RUSSELL COUNTY SCHOOL BOARD;
KIMBERLY HOOKER, Individually and as an
Agent of RUSSELL COUNTY SCHOOL BOARD;
BOBBY GOBBLE, Individually and as an
Agent of RUSSELL COUNTY SCHOOL BOARD;
and JOHN ROES 1-10;

        Defendants.

_____

**MOTION IN LIMINE AND BRIEF IN SUPPORT**
**TO EXCLUDE NEW EXPERT REPORTS OR TESTIMONY**

       Plaintiff anticipates Defendants will attempt to introduce at trial testimony from experts

Dr. Elisabeth Counselman-Carpenter and Dr. Alex Redcay, based upon supposed

"supplemented" expert reports disclosed after this Court's established deadlines.

Dr. Counselman-Carpenter's second report, served on the last day of the discovery period, well

after the disclosure deadline, states an entirely new opinion differing from that set forth in her

original report and described in her deposition, and is based on records that were readily

available to her before she issued her original opinion.  Dr. Redcay's second report, served on

Plaintiff only 28 days prior to the scheduled start of trial, omits testimony from her previous

report that supports Plaintiff's claims, and goes so far as to attempt to opine on Title IX issues

for which she lacks any qualification.  Had Dr. Redcay attempted to opine on Title IX in her

original report, Plaintiff would have moved to exclude her on a Daubert motion, but no longer has the option of doing so.

Any attempt by Defendants to introduce these "new and improved" opinions will contravene (i) the Court's scheduling order for expert's disclosures; (ii) Judge Sargent's verbal order on December 15, 2017, that no party could submit even a true "supplemented" expert report (as opposed to an entirely new expert opinion) after the expert's deposition; (iii) the Federal Rules of Civil Procedure; and (iv) Fourth Circuit precedent and applicable case law. Accordingly, any opinion not set forth in Dr. Counselman-Carpenter's original report and deposition, or Dr. Redcay's original report, must be excluded from trial.

Plaintiff also requests this Court order School Defendants pay reasonable expenses, including attorney's fees, caused by their inexplicable failure to timely disclose their experts' new opinions, in direct contravention of Judge Sargent's order and the pertinent Federal rules and legal precedent, which necessitated Plaintiff's counsel drafting, researching, and filing this motion to exclude, pursuant to Fed. R. Civ. P. 37(c)(1).

## **BACKGROUND**

### I.    **This Court's Scheduling Order**

On March 20, 2017, this Court issued a Scheduling Order establishing a trial date of March 12-16, 2018. (Doc 36, Pageid#567.) The Order required, "[a]ll discovery must be complete by no later than 90 days before trial," making December 12, 2017 the last date for discovery. (Doc 36, Pageid#567-68.)

The Scheduling Order stated Plaintiff's expert disclosures were due August 1, 2017, and Defendants' expert disclosures were due September 1, 2017. (*Id.*, Pageid#567.) Plaintiff's rebuttal disclosures were due on October 1, 2017. (*Id.*)

December 27, 2017 was the deadline for summary judgment and Daubert motions.  (*See id.*, Pageid# 567-68.)

## II.    <u>School Defendants Engaged In Continued Delay throughout Discovery</u>

On June 5, 2017, Plaintiff served his First Request for Production of Documents and First Interrogatories on Defendants Russell County School Board, Henley, and Hooker ("School Defendants").  (*See* Doc. 48 (Cert. of Service).)  School Defendants' responses to the discovery demands were due 30 days later, on July 5, 2017.  *See* Fed. R. Civ. P. 33(b)(2), 34(b)(2)(a).

On June 30, 2017, School Defendants' counsel requested a two-week extension to respond to Plaintiff's discovery requests.  (*See* Ex.1 (June 30, 2017 email from C. Dadak to P. Thomson.)  Plaintiff's counsel agreed, asking for confirmation that School Defendants' responses would include "real answers and not a ton of objections."  (*Id.*)

On July 19, 2017, School Defendants responded by asserting boilerplate objections to each and every document request, and produced no documents.

On July 26, 2017, School Defendants' counsel stated he would be in Russell County the following week to assemble documents responsive to Plaintiff's requests.  (Ex. 2 (July 26, 2017 email from C. Dadak).)

However, School Defendants did not produce a single document responsive to the requests until September 18, 2017, over two months after they were originally due, and only after Plaintiff's counsel threatened to file a motion to compel.  (*See* Ex. 3 (Sept. 9, 2017 Letter from M. Beck to C. Dadak).)

## III.    <u>Plaintiff Promptly Responded to School Defendants' Discovery Requests</u>

In contrast to School Defendants, Plaintiff complied with his discovery obligations as required by the Federal Rules of Civil Procedure.

On July 10, 2017, School Defendants propounded their first set of discovery on Plaintiff.

On August 9, 2017, Plaintiff fully responded to School Defendants' document requests and interrogatories, and produced to Defendants over 1,600 pages of documents. The document production included, *inter alia*, statements made by Defendants Hooker and Henley, along with school administrators Cathy Gent, Dennis Price, and Scotty Fletcher; audio and written transcripts of many teachers' interviews with law enforcement; audio and written transcripts of interviews with John Doe's family members; transcripts and audio recordings of John Doe and Defendant Gobble's other victims; transcripts of interviews with Gobble; police records; and criminal proceeding records; all concerning the criminal investigation and conviction of Gobble in early 2014. (Doc. 50; Ex. 4 (Aug. 9, 2017 email from M. Beck.) Plaintiff also produced records from Russell County Department of Social Services ("DSS") concerning John Doe and John Doe's school records and grade reports, requested and received pursuant to the Freedom of Information Act and Family Educational and Rights Act.

Also in his **August 9, 2017** discovery responses, Plaintiff's Answer to Interrogatory No. 12 specifically informed School Defendants that John Doe had treated with an unknown counselor in Marion, Virginia, in the last year when he was in foster care. (*See* Ex. 5 (Excerpt from Interrog. Responses).) John could not remember the name of the counselor, and his mother did not know the name either.

School Defendants inexplicably waited until **October 31, 2017**, nearly three months after receiving this Answer, to issue a subpoena to DSS for records and information regarding John's time in foster care and the counselor he then saw. (*See* Ex. 6 (Subpoena to DSS).)

IV.    **School Defendants Had Nearly Two Months to Provide Their
Experts' Disclosures after Receiving Plaintiff's Experts' Reports**

Due to School Defendants' repeated discovery delays, the parties agreed to extend the
deadline for expert disclosures, making Plaintiff's experts' reports due by August 29, 2017,
Defendants' expert reports due by September 29, 2017, and Plaintiff's rebuttal by October 13,
2017.  (*See* Ex. 2.)

On August 29, 2017, as agreed, Plaintiff's counsel provided Defendants' counsel with
expert disclosures and reports from Dr. Charol Shakeshaft, Dr. Richard Epstein, and Dr. Collin
Linsley.  (*See* Doc. 51.)

On September 22, 2017, only a week before their expert reports were due, School
Defendants' counsel requested an additional *three week extension* for disclosure of their expert
reports, making them due on October 20, 2017.[1]  (*See* Ex. 7 (Sept. 25, 2017 email from C.
Dadak.)  Plaintiff's counsel reluctantly agreed, provided that School Defendants made their
experts available for depositions during the week of November 13-16, 2017.  (*See id.* (Sept. 27,
2017 email from M. Beck.).)

On October 20, 2017, having had *two months* to review and analyze Plaintiff's expert
reports, School Defendants provided Plaintiff with reports from Dr. Counselman-Carpenter, on
John Doe's projected mental health outcome and liability (Ex. 8); Dr. M. David Alexander, a
professor of education, on liability; and Dr. Redcay, who has a PhD in social work, also on

---

[1] As of September 22, 2017, School Defendants likely had not yet even retained their experts, or
provided their experts with any information.  The billing records produced by Dr. Counselman-
Carpenter show she did not begin reviewing documents or working on her report until October
13, 2017.  (*See* Ex. 10 (Billing Records).)

liability (Ex. 9).[2]

## V.    School Defendants Continued to Delay and Failed to Comply with Their Discovery Obligations

Due to School Defendants' late document production and discovery responses, Plaintiff was unable to begin taking depositions until October 2017.

As the depositions started, School Defendants produced additional documents responsive to Plaintiff's initial requests, sometimes on the eve or morning of depositions. On October 31, 2017, Plaintiff's counsel objected to the belated document productions. (*See* Ex. 11 (Oct. 31, 2017 Letter from M. Beck to C. Dadak).)

Despite School Defendants' representation their experts would be available for depositions the week of November 13-16, 2017, they were not made available until November 27, 2017, when Plaintiff's counsel deposed Drs. Counselman-Carpenter and Alexander.

School Defendants' counsel deposed Plaintiff's expert, Dr. Shakeshaft, on November 15, 2017, and Dr. Epstein on November 30, 2017. During his deposition, Dr. Epstein offered rebuttal to Dr. Counselman-Carpenter's report and opinions stated therein.

On December 5, 2017, with only five business days remaining in the discovery period, School Defendants' counsel, for the very first time, stated they wanted to depose Plaintiff John Doe.

On December 11, 2017, the day before the end of the discovery period, School Defendants produced approximately 1,500 pages of additional documents responsive to Plaintiff's First Requests for Production of Documents, half a year after they were originally due.

---

[2] Plaintiff is contemporaneously filing a motion in limine to exclude all testimony that states a legal conclusion, including that of Drs. Counselman-Carpenter, Alexander, and Redcay, pursuant to this Court's Opinion and Order on the parties' motions for summary judgment.

The documents were highly relevant to Plaintiff's § 1983 failure to train claim, as they contained records of school employees' past sexual misconduct against students.

On December 12, 2017, the *last day of discovery*, School Defendants provided a supposed "supplemented" expert report from Dr. Counselman-Carpenter. (Ex. 12 (Purported Supplemented Report).)

## VI.    Judge Sargent Verbally Ruled and Instructed No Party May Supplement an Expert's Report after the Deposition of that Expert

Also on December 12, 2017, School Defendants filed a motion to amend the Scheduling Order, requesting that discovery continue beyond the long-established end date. (Doc. 53.) School Defendants argued an extended discovery period was necessary so they could depose John Doe and, also, so their experts could review records and transcripts from depositions already taken, and "supplement" their expert reports. (*Id.*, Pageid#701-02.)

Plaintiff filed an opposition to the motion arguing School Defendants failed to show good cause for their motion. (Doc. 55.) Plaintiff also pointed out the parties had up to 30 days prior to trial to furnish supplemented expert reports, pursuant to Fed. R. Civ. P. 26(a)(3) and (e)(2). (*Id.*, Pageid#708.)

On December 15, 2017, Judge Sargent held a hearing via conference call on School Defendants' motion. (*See* Doc. 54, Notice of Hearing.) During the hearing, Judge Sargent reprimanded School Defendants for their belated document productions, and allowed extended discovery for the *sole* purpose of taking John Doe's limited deposition. (*See* Doc. 58.) She also rejected Plaintiff's argument the parties had up until 30 days prior to trial to furnish supplemented expert reports. **Judge Sargent instructed that no party would be permitted to submit or rely upon an expert report that was supplemented after that expert's deposition**

**in this case, as the opposing party would be prejudiced and unable to conduct discovery on that supplemented opinion**.

School Defendants have not requested that this Court review or otherwise revisit Judge Sargent's verbal ruling and instruction to the parties.   Plaintiff has complied with Judge Sargent's instruction, and has not supplemented any of his experts' reports.

On **February 12, 2018**, School Defendants disclosed to Plaintiff's counsel a purported "supplemented" report for Dr. Redcay.  (Ex. 13 (Purported Supplemented Report).)  Plaintiff's counsel immediately objected, given Judge Sargent's ruling and that the so-called "supplementation" was made less than 30 days prior to trial, and thereby prohibited by Fed. R. Civ. P. 26.  (See Ex. 14 (Feb. 12, 2018 email from M. Beck).)  School Defendants' counsel did not respond to Plaintiff's objection.

## ARGUMENT

### I.    Legal Standard for Excluding Untimely Expert Disclosures

#### A.    Pertinent Federal Rules of Civil Procedure

A party's expert disclosure must contain, *inter alia*, "a complete statement of all opinions the witness will express and the basis and reasons for them," and "the facts or data considered by the witness in forming them."  Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii).  A party must make expert witness disclosures "at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(D).  As one District Court has explained:

> Anyone who has any familiarity with the 1993 Rule amendment [to expert disclosures], including familiarity with the Notes of the Advisory Committee on Rules, is well aware that its requirements were geared to provide the opposing party with "a reasonable opportunity to prepare for effective cross-examination," (Committee Notes) and, in accordance with the Rules' fundamental principle of eliminating any vestiges of the "sporting" or "fox-hunt" theory of litigation, to provide the opposing party with a comparable opportunity to prepare for examination of experts via depositions in advance of trail.

8

*Aircraft Gear Corp. v. Kaman Aerospace Corp.*, No. 93 C 1220, 1995 U.S. Dist. LEXIS 13962, at *4 (N.D. Ill. Sept. 25, 1995).

> Fed. R. Civ. P. 26(e)(2) states:
>
> (2) *Expert Witness.* For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Pretrial disclosures must be made at least 30 days prior to trial, "[u]nless the court orders otherwise." Fed. R. Civ. P. 26(a)(3)(B). During the parties' December 15, 2017 hearing, Judge Sargent clarified the 30 day time period did not apply here because this Court's Scheduling Order had "otherwise ordered" deadlines for the parties' expert disclosures.

New expert testimony produced after the deadline for disclosures should be excluded, as follows:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). In addition, a court also may "order payment of the reasonable expenses, including attorney's fees, caused by the failure." *Id.*

### B.    Legal Precedent and Applicable Case Law

The Fourth Circuit holds that Fed. R. Civ. P. 26(e) permits supplemental reports for the narrow purpose of correcting inaccuracies or adding information unavailable at the time of the initial report. *See Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190-91, 212 (4th Cir. 2017). Notably, the duty to supplement "does not permit a party to make an end-run around the normal timetable for conducting discovery." *Colony Apartments v. Abacus Project Mgmt., Inc.*, 197

Fed. Appx. 217, 223 (4th Cir. 2006). "Courts distinguish true supplementation (e.g., correcting inadvertent errors or omissions) from gamesmanship, and have therefore repeatedly rejected attempts to avert summary judgment by supplementing an expert report with a new and improved expert report." *Gallagher v. Southern Source Packaging, LLC*, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008). "The mere fact that a [party's] [f]irst [r]eport does not state all of the opinions it would now like to admit does not give them free reign to submit those opinions under the guise of supplementation, and it certainly does not mean that the Court must now admit them." *East West, LLC v. Rahman*, No. 1:11cv1380, 2012 U.S. Dist. LEXIS 133381, at *21 (E.D. Va. Sept. 17, 2012). "To rule otherwise would create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given." *Beller ex rel. Beller v. United States*, 221 F.R.D. 696, 701 (D.N.M. 2003). Moreover, Fed. R. Civ. P. 26(e) "does not give license to sandbag one's opponent with claims and issues which could have been included in the expert witness' report (indeed, the lawsuit from the outset)." *Id.* (citation omitted).

In deciding whether to exclude purported "supplemental" expert testimony from trial pursuant to Fed. R. Civ. P. 37(c)(1), a "court must first determine whether the defendant's supplemental disclosures were 'true supplementation' rather than gamesmanship and delay." *Rahman*, 2012 U.S. Dist. LEXIS 133381, at *18. If an untimely expert disclosure is truly a supplement, then it may be permitted pursuant to Fed. R. Civ. P. 26(a)(3). *Id.* However, if the disclosure is not a "true supplement," then the court has the discretion to exclude it pursuant to Fed. R. Civ. P. 37(c)(1). *See id.* A report is not a true "supplement" if it "contains new information and new expert opinion, intended both as an expansion of [an] earlier report as well

10

as a means to impermissibly broaden the scope of the expert opinions that [the party] seeks to admit." *Id.* at *18-19.

If the expert opinion or evidence is new, and not a true supplement, it may be excluded if the nondisclosure was "substantially justified or harmless." *See* Fed. R. Civ. P. 37(c)(1). The Fourth Circuit provides the following factors as guidelines for determining whether an untimely new expert disclosure was "substantially justified or harmless":

> (1) the surprise to the party against whom the evidence would be offered;
> (2) the ability of that party to cure the surprise;
> (3) the extent to which allowing the evidence would disrupt the trial;
> (4) the importance of the evidence; and
> (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595-96 (4th Cir. 2003). The party who failed to disclose information bears the burden of establishing its nondisclosure was "substantially justified" or "harmless." *Bresler*, 855 F.3d at 190.

In a recent case from a sister district court, a party was precluded from adducing at trial new expert testimony made in a purported "supplemental" report produced on the last day of the discovery period. *See Disney Enters., Inc. v. Kappos*, 923 F. Supp. 2d 788, 795-96 (E.D. Va. 2013). The court found the report was untimely and not a true supplement because it referenced new information that should been included in the expert's earlier report. *See id.* at 795. The court utilized the *Sherwin-Williams* factors, and determined, even though the opposing party had the opportunity to cross-examine the expert about his supposed "supplemental" opinion, it was surprised by the new evidence, there was no satisfactory explanation for the failure to timely disclose the new opinion, and the expert was precluded from testifying about his new opinion or the new evidence at trial. *See id.* at 796.

Similarly, in *Rahman*, the court ordered stricken the defendants' so-called "supplemental" report, which defendants disclosed during the parties' summary judgment briefing, as it was a new rebuttal to the plaintiff's expert report and contained new information, new issues, and new expert analysis. *Rahman*, 2012 U.S. Dist. LEXIS 133381, at *19-22. In making its holding, the court reviewed the *Sherwin-Williams* factors, and found surprise to plaintiff, partly because defendants already had been granted an extension of time to file their expert report; plaintiff could not cure the surprise so close to trial; reopening discovery close to trial would disrupt the trial schedule; the evidence was important because it served to rebut plaintiff's expert reports; and defendants did not provide an explanation for their failure to previously disclose the new opinion and information in the "supplemented" report. *See id.* at *20-22.

## II.    Any New Testimony or Evidence Set Forth In or Regarding Dr. Counselman-Carpenter's New Opinion in Her Second Report Must Be Excluded from Trial

Dr. Counselman-Carpenter's original expert report was disclosed to Plaintiff on October 20, 2017. On November 27, 2017, Plaintiff's counsel deposed her. School Defendants then waited until the very last day of discovery, December 12, 2017, long after the deadline for disclosing new expert testimony or information, and after Plaintiff had already deposed her, to serve Dr. Counselman-Carpenter's purported "supplemented" report on Plaintiff. Pursuant to the Court's Scheduling Order, Judge Sargent's order, and the Federal Rules of Civil Procedure, School Defendants' expert disclosure was untimely.

Moreover, the report is not a true supplement and, instead, offers an entirely new and different opinion regarding a diagnosis of John Doe. Dr. Counselman-Carpenter's original report stated, "**While it is difficult to diagnose someone without having conducted a formal in-person evaluation, solely based on the symptoms Dr. Epstein reports, the diagnosis of**

12

**PTSD [for John Doe] is likely accurate, but remains inconclusive**.” (Ex. 8 at 1-2.) She

confirmed this opinion in her deposition and did not offer any different opinion. (Ex. 15

(Excerpt of Counselman-Carpenter Dep.) at 57.)

However, in her second report, Dr. Counselman-Carpenter, who still has not conducted a

formal in-person evaluation of John, offered the *new* opinion that John supposedly “demonstrates

a diagnosis of Adjustment Disorder with mixed anxiety and depression,” based on her review of

particular DSS and the few counseling records available for John Doe. (Ex. 12 at 1.) Her second

report thus is not a true “supplement” because it “contains new information and new expert

opinion, intended both as an expansion of [her] earlier report as well as a means to impermissibly

broaden the scope of the expert opinions that [School Defendants] seeks to admit.” See *Rahman*,

2012 U.S. Dist. LEXIS 133381, at *18-19.

Defendants cannot meet their burden in showing their new expert opinion, made in the

afternoon on the last day of discovery and only two weeks prior to the deadline for summary

judgment motions, was “substantially justified” or “harmless.”

With respect to the first *Sherwin-Williams* factor, “the surprise to the party against whom

the evidence would be offered,” Plaintiff has suffered extreme and prejudicial surprise. Since

Judge Sargent’s verbal ruling on December 15, 2017, School Defendants have not filed a motion

requesting review of Judge Sargent’s verbal ruling or instruction, nor have they filed a motion

for leave to disclose new expert testimony. Up until February 12, 2018, when Defendants served

on Plaintiff a purported “supplemented” report from Dr. Redcay (which is addressed below),

Plaintiff understood Defendants intended to comply with Judge Sargent’s order. Plaintiff

certainly complied with Judge Sargent’s verbal order and instruction, has not sought to even

truly supplement his experts’ reports, and did not seek to re-depose Dr. Counselman-Carpenter

on her new opinion.  Moreover, much like the surprised party in *Rahman*, Plaintiff courteously provided School Defendants with lengthy extensions of the deadlines for discovery responses and their expert disclosures, and Plaintiff expected School Defendants to meet those extended deadlines.  *See Rahman*, 2012 U.S. Dist. LEXIS 133381, at *19-22.

With respect to the second *Sherwin-Williams* factor, "the ability of that party to cure the surprise," School Defendants' indication they likely intend to present Dr. Counselman-Carpenter's new opinion became clear only on February 12, 2018, a mere 28 days prior to trial, when they produced Dr. Redcay's new opinion.   The parties are currently engaged in full-on trial preparation, and it would be prejudicial and unfair to Plaintiff to expect him to expend further resources, at the sacrifice of other trial preparation, to re-depose Dr. Counselman-Carpenter at this late date.  Moreover, Plaintiff's ability to cross-examine Dr. Counselman-Carpenter on her new opinion at trial is legally insufficient to cure surprise.   *See Sherwin-Williams*, 318 F.3d at 598.

With respect to the third factor, "extent to which allowing the evidence would disrupt the trial," Plaintiff does not have adequate time to depose Dr. Counselman-Carpenter *and* prepare for trial.  Trial here has long been scheduled to begin March 12, 2018, and the schedule should not be changed due to Defendants' discovery tactics.

The fourth factor regarding "the importance of the evidence" also favors excluding Dr. Counselman-Carpenter's new opinion.  Just as in *Rahman*, the new opinion rebuts plaintiff's expert's opinion on injury, future harm John is likely to suffer, and damages, and is thereby highly important evidence. *See Rahman*, 2012 U.S. Dist. LEXIS 133381, at *19-22

Finally, School Defendants have offered no explanation for this late disclosure, likely intended to sandbag Plaintiff at the end of the discovery period or force Plaintiff to agree to

14

extend the discovery period, from which extension Plaintiff would not benefit, as he had already

expended significant resources in properly complying with his discovery obligations and the

Federal Rules of Civil Procedure.  Plaintiff anticipates School Defendants will attempt to argue

that the DSS and foster care records upon which Dr. Counselman-Carpenter based her new

opinion were unavailable until late in the discovery period, somehow rationalizing or otherwise

excusing the new opinion.[3]  However, as set forth above, Plaintiff  disclosed to Defendants on

**August 9, 2017**, that he had been in counseling when in foster care, and Defendants inexplicably

failed to conduct any additional discovery on that counseling, or even request DSS records, until

**October 30, 2017**, when they issued a subpoena for the records.  Also, Dr. Counselman-

Carpenter could have, at any time, requested a forensic examination of John Doe, but she never

did.  This dilatory conduct by Defendant was not an isolated incident, as made clear by the

description above of Defendants' repeated failures to comply with document production and

other discovery deadlines, and "dumping" highly relevant documents on Plaintiff on the eve of

the close of discovery.

Accordingly, Dr. Counselman-Carpenter's new report, new opinion, and new evidence

should be excluded from trial.  This includes, but is not limited to the following:

(1) Dr. Counselman-Carpenter's new opinion, based on DSS records available and easily
discoverable early in this litigation, that disagrees with Dr. Epstein's opinion
regarding John Doe's mental health, future mental health, level of care, and treatment
recommendation.

(2) Dr. Counselman-Carpenter's new opinion, based on "limited access to diagnostic
information from John Doe's mental health treatment history," that he demonstrates a
"diagnosis of Adjustment Disorder with mixed anxiety and depression (F43.23), not
PTSD."

---

[3] Dr. Counselman-Carpenter's new opinion and report is largely based upon hearsay in
unauthenticated DSS documents and other records, and is replete with errors and factual
assertions that contradict John Doe's own sworn testimony, making it nearly entirely
objectionable and inapt.

(3) Any testimony or evidence regarding "John Doe's capacity for and demonstration of continued factors of resilience."

(4) Any reference or reliance by Dr. Counselman-Carpenter on DSS or counseling records that School Defendants failed to provide her before she issued her original opinion, as that failure was solely due to School Defendants' own delayed discovery, which they continued to engage in throughout this litigation, likely as a tactic to prejudice Plaintiff, and no fault of Plaintiff.

(*Compare* Exs. 8 and 12.)

### III.    Any New Testimony or Evidence Set Forth In or Regarding Dr. Redcay's New Opinion in Her Second Report Must Be Excluded from Trial

Dr. Redcay's original expert report was disclosed to Plaintiff on October 20, 2017. Due to the weakness of Dr. Redcay's opinions (which read like purported factual assertions and not opinions), the many factual errors and omissions in her report, and her improperly provided legal conclusions, Plaintiff's counsel opted to not depose her, preferring to simply cross-examine her at trial and reveal the faults of her supposed opinions.

On February 12, 2018, only 28 days prior to trial, School Defendants produced a purported "supplemented" report from Dr. Redcay. Pursuant to the Court's Scheduling Order and the Federal Rules of Civil Procedure, School Defendants' expert disclosure was untimely and improper.

Moreover, Dr. Redcay's new report is not a true supplement. In her original report, Dr. Redcay stated the following opinions:

(1) "John Doe's grandmother gave permission for him to live with [Gobble]."

(2) "Gobble acted as a parent to John assuming all the rights, duties, and responsibilities of a parent. No other friends, parents, or family members assumed any caretaking responsibility nor did they object to [Gobble] doing it."

(3) "No staff members, at Lebanon Elementary School (LES), Russell County Public Schools System (RCPSS), observed, heard rumors about, suspected, or had cause to

16

suspect that John Doe as being sexually assaulted or molested.  In fact, John directly denied that any problems occurred several times and never reported any.[4]"

(4) "A significantly small number of children report sexual assault by a janitor so it is a very unlikely occurrence.  However, if LES-RCPSS staff members suspect child abuse/neglect, they are mandated by law to report it immediately."

(5) "As soon as a LES-RCPSS staff member became aware of suspected child/abuse neglect [sic], they followed the rules according to the Code of Virginia 63.2-1509 and the policy of the Virginia Department of Social Services, Child Protective Services, based on the Children & Family Services Manual (July, 2017)."

(Ex. 9 at 1-2).  Dr. Redcay's report included a description of DSS training and investigation that supports Dr. Shakeshaft's descriptions of that training and investigatory methods, and Dr. Shakeshaft's opinion as to why DSS training and investigation is insufficient to detect school employee behaviors, as opposed to signs exhibited by the child, that indicate an employee is sexually harassing a child or crossing appropriate staff-student boundaries.  (*Id.* at 4-5 (describing DSS training and investigation, based on behaviors and signs exhibited by child).)

Notably, despite the availability of the +1,000 pages of documents Plaintiff produced in discovery on August 9, 2017 – which included transcripts and recordings of interviews with administrators, teachers, John Doe, and John Doe's family members, along with DSS records – Dr. Redcay based her original report only on her review of the Complaint, Plaintiff's Objections and Answers to Defendant Russell County School Board's First Interrogatories, and the expert reports of Dr. Epstein and Dr. Shakeshaft.  (*Id.* at 1.)

In her second report, Dr. Redcay stated the following opinions:

(1) "John Doe's guardians, his grandparents and his mother, gave permission for John to have unrestricted contact with [Gobble].  John frequently requested to spend time with [Gobble].  Teachers and staff provided John, as well as other children at the school, items such as clothing because the [sic] he had financial need.  [Gobble]

---

[4] Plaintiff is contemporaneously filing a motion in limine to exclude all testimony such as Dr. Redcay's, which argues or implies John Doe, a minor child, somehow "consented" to Gobble's years of criminal sexual assault and battery.

showed an interest in improving John's grades and as John spent more time with [Gobble], his grades improved or at least remained constant. As a professed Christian and like many school staff and teachers, [Gobble] showed a genuine interest in helping John."

(2) "Staff, teachers and administrators at Russell School District followed Code of Virginia 63.2-1509, **Title IX Requirements** and DSS policy."

(Ex. 13, at 1.) In short, Dr. Redcay's new opinion continues to make inapt factual assertions, and she improperly adds an entirely new opinion regarding Title IX, even though she has no background or experience with Title IX.[5] (*Id.*) Had Dr. Redcay opined on Title IX in her original report, Plaintiff would have filed a *Daubert* motion to disqualify her.

Accordingly, Dr. Redcay's second report is not a true "supplement" because it contains "new expert opinion, intended both as an expansion of [her] earlier report as well as a means to impermissibly broaden the scope of the expert opinions that [School Defendants] seek[] to admit." See *Rahman*, 2012 U.S. Dist. LEXIS 133381, at *18-19.

School Defendants cannot meet their burden in showing Dr. Redcay's new expert opinion on Title IX, disclosed only 28 days prior to the beginning of trial, was "substantially justified" or "harmless."

With respect to the first *Sherwin-Williams* factor, "the surprise to the party against whom the evidence would be offered," Plaintiff has suffered surprise. As in *Rahman*, Plaintiff provided School Defendants with extensions of the deadlines for expert disclosures, and Plaintiff expected School Defendants to meet those extended deadlines. *See Rahman*, 2012 U.S. Dist. LEXIS 133381, at *19-22. Plaintiff certainly did not expect School Defendants to attempt to disclose new expert opinions only 28 days before trial, in violation of Judge Sargent's order and the Federal Rules of Civil Procedure.

---

[5]*See* Ex. 16 (Dr. Redcays CV).

With respect to the second *Sherwin-Williams* factor, "the ability of that party to cure the surprise," again, the parties are preparing for trial and should not be required to depose Dr. Redcay at this late date.  Moreover, the deadline for *Daubert* motions is passed, and Plaintiff is unable to move to disqualify Dr. Redcay for her new Title IX opinion.

With respect to the third factor, "extent to which allowing the evidence would disrupt the trial," Plaintiff does not have adequate time to depose Dr. Redcay, file a Daubert motion against her (if permitted), *and* prepare for trial.  Trial here has long been scheduled to begin March 12, 2018, and the schedule should not be changed due to Defendants' inexplicable failure to comply with deadlines and the Federal Rules of Civil Procedure.

The fourth factor regarding "the importance of the evidence" also favors excluding Dr. Redcay's new – and unqualified – opinion.  Dr. Redcay's new report concludes the School Defendant complied with Title IX, which is one of the ultimate legal issues in this case, and is highly important.

Finally, School Defendants have offered, and cannot offer, a valid explanation for this late disclosure.  Dr. Redcay's new report is, again, likely intended to sandbag Plaintiff, and is nothing more than an end-run around applicable discovery deadlines.  To the extent School Defendants attempt to argue that Dr. Redcay's second report is based on new discovery available only in February 2018, the only true "new" materials she utilizes as the basis for her so-called opinions are references to Department of Education Office for Civil Rights guidance, including "Revised Sexual Harassment Guidance: Harassment of Students by School Employees, other students, or third parties, and Title IX US Department of Education Office for Civil Rights;" and Dear Colleague letter issued 4/4/11."  (Ex. 13 at 6, n. xii and xiii.)  These documents are publicly available, and, in any event, Plaintiff referenced this very *same* guidance in his Complaint, filed

on December 8, 2016, well over a year ago.  (Doc. 1, Pageid#7-9, ¶¶ 32, 39.)  Moreover, Dr.

Redcay could have reviewed the previous statements, interview transcripts and recordings that

Plaintiff produced to School Defendants on August 9, 2017, and – at any time – she could have

interviewed School Defendants' witnesses in order to obtain information she needed to form the

basis for her so-called opinions, and there is no reason why, instead, she had to wait and review

deposition transcripts of those witnesses.

Accordingly, Dr. Redcay's new Title IX opinion and testimony should be excluded from

trial.

## **CONCLUSION**

As set forth above, School Defendants have repeatedly failed to meet their discovery

obligations and caused delay after delay in this litigation.  Plaintiff courteously granted School

Defendants requested extensions to discovery and expert deadlines.  School Defendants failed to

meet those extended deadlines, and their efforts to disclose new expert opinions under the guise

of "supplementing" their experts' original reports cannot be permitted.

For all of the foregoing reasons, Plaintiff's Motion to Exclude should be GRANTED in

its entirety.

Plaintiff also requests this Court GRANT his request that School Defendants pay

reasonable expenses, including attorney's fees, in preparing, researching, and filing this motion,

which was solely caused by School Defendants' improper attempt to circumvent this Court's

Scheduling Order, Judge Sargent's ruling, and the Federal Rules of Civil Procedure.

Respectfully Submitted,

**THE FIERBERG NATIONAL LAW GROUP, PLLC**

Dated:  February 19, 2018          By:    /s/ Monica H. Beck
                                         Douglas E. Fierberg
                                         Monica H. Beck
                                         Attorneys for Plaintiff
                                         161 East Front Street, Suite 200
                                         Traverse City, MI 49684
                                         (231) 933-0180
                                         Fax:  (231) 252-8100
                                         mbeck@tfnlgroup.com

**THE THOMSON LAW FIRM, PLLC**

Dated:  February 19, 2018          By:    /s/ Paul R. Thomson, III
                                         Paul R. Thomson, III
                                         Attorneys for Plaintiff
                                         2721 Brambleton Avenue, SW
                                         Roanoke, Virginia 24015
                                         (540) 777-4900
                                         Fax: (540) 772-0578
                                         paul@roanokeinjurylawyer.com