# EXHIBIT 9



2148 Embassy Drive Lancaster, PA 17603; 717-480-0585 www.SeriseInc.com

Thursday, October 19, 2017

### John Doe v Russell County School Board

#### Documents Relied Upon
I have reviewed the following documents for this report:
- Complaint and Jury Demand, Filed 12/8/16
- Plaintiff's Objections and Answers to Defendant Russell County School Boards First Interrogatories, dated 8/8/17
- Psychiatric Report by Richard Epstein, dated 8/22/17
- Report by Charol Shakeshaft, dated 8/29/17

#### Persons Involved
- Phillip Henley (**PH**), Principal of Lebanon Elementary School (**LES**), Russell County Public Schools System (**RCPSS**) until the Spring 2013 when Kimberly Hooker became principal.
- Kimberly Hooker (**KH**), became the principal of **LES-RCPSS** in the Spring 2013.
- John Doe, child victim
- Mother of John Doe
- Another male child victim (**AM**)
- Bobby Gobble (**BG**), Convicted sexual abuse against John Doe and 3 other children, Custodian employed at **LES-RCPSS** from 2006 to 2014. From 2012 to 2014, he was promoted to head custodian.[i]
- Russel County Sheriff's Department (**RCSD**)
- Department of Social Services (**DSS**), Child Protective Services (**CPS**)
- Reelia Watson, Attorney for John Doe

#### Conclusions in brief.

1. John Doe's grandmother gave permission for him to live with **BG**

2. BG acted as a parent to John assuming all the rights, duties, and responsibilities of a parent. No other friends, parents, or family members assumed any caretaking responsibility nor did they object to BG doing it.

3. No staff members, at Lebanon Elementary School (**LES**), Russell County Public Schools System (**RCPSS**), observed, heard rumors about, suspected, or had cause to suspect that John Doe was being sexually assaulted or molested. In fact, John directly denied that any problems occurred several times and never reported any.

4. A significantly small number of children report sexual assault by a janitor so it is a very unlikely occurrence. However, if **LES-RCPSS** staff members suspect child abuse/neglect, they are mandated by law to report it immediately.[ii]

Report written by Dr. Alex Redcay, DSW Director, Assistant Professor at Millersville University
http://millersville.edu/socialwork/faculty/alex_redcay.php                Page 1 of 9

5. *As soon as a **LES-RCPSS** staff member became aware of suspected child/abuse neglect, they followed the rules according to the Code of Virginia 63.2-1509 and the policy of the Virginia Department of Social Services, Child Protective Services, based on the Children & Family Services Manual (July, 2017).*

---

## Conclusions in detail

*1. John Doe's grandmother gave permission for him to live with BG*

In 2011, 9-year-old John Doe, attended the 3rd grade of Lebanon Elementary School (**LES**), Russell County Public Schools System (**RCPSS**). During that same year, **LES-RCPSS** staff member **BG** developed a relationship with John[iii]. John's grandmother's supported this relationship and gave her permission. John's grandmother eventually gave John permission to live with **BG** and **BG** assumed all the rights, duties, and responsibilities of a parent.[iv] He even stated that John "was like a son to him"[v] and was "trying to adopt John."[vi] **LES-RCPSS** neither encouraged **BG**'s caretaking behavior nor interfered with it. **BG** also spent extra time with John, provided food, clothing, took "family" road trips, financially provided, expressed concern, took him to sporting events, was affectionate verbally and in writing in his role as a father-like caregiver before and after maintaining physical custody of John.[vii] John felt that BG was his father as well, demonstrated by his note to BG indicating, "I love my daddy, BG."[viii] **BG** was not interacting with John as a representative of the school district since all of his caretaking for John was personal and unrelated to his role as a janitor for the **LES-RCPSS.** BG functioned like any of staff member who happened to have a child who attended the same school. **LES-RCPSS** neither encouraged nor discouraged **BG**'s caretaking as they would with any other parent, guardian, or caregiver.

John's grandmother gave approval for John to live with another adult. The school was made aware of this information. It would be inappropriate for the Principal of **LES-RCPSS** to *interfere, supervise, discriminate, or approve* living arrangements for any family or child within the school. Families *have a right* to make private decisions about living arrangement and who serves in a parental capacity for their child. **RCPSS** does not discriminate against anyone based on the status as a parent.[ix] The school is expected to be informed regarding the living arrangements and approved parties for the purpose of transportation to and from school, and in the case of an emergency. It is not appropriate for the school district to ask for proof of parenthood, legal guardianship, or physical custody arrangements. It is appropriate and the policy of **RCPSS** to ensure that the children receive the best education possible.[x]

*2. BG acted as a parent to John assuming all the rights, duties, and responsibilities of a parent. No other friends, parents, or family members assumed any caretaking responsibility nor did they object to BG doing it.*

**BG** did not share a bedroom with his soon to be ex-wife. Due to a small home, the only other bedroom was with John so **BG** and John shared a room. Frequently, parents share rooms with their young children either due to the child's attachment to the parent, inability to fall asleep, nightmares, anxiety, or the family's inability to provide separate rooms due to poverty. From an

outsider perspective, **BG** seemed to demonstrate a caring and loving fatherly-caretaker role to a child without parents which is a common scenario. Many children, who have parents that are unwilling or unable to care them are frequently cared for by someone willing in their social or support network. Often times, volunteer caregivers arise from church communities or the local school because typically these individuals have ample love to provide for the needy. They do not care for them because they are employed to do so or have malicious intent, it is an act that is entirely outside of their employment obligations. It should never be assumed if an adult, or even an adult male, who shows love and care for an abandoned child must be a sexual predator. We should look for evidence of sexual abuse.

3. *No staff members, at Lebanon Elementary School (**LES**), Russell County Public Schools System (**RCPSS**), observed, heard rumors about, suspected, or had cause to suspect that John Doe was being sexually assaulted or molested. In fact, John has directly denied that any problems occurred and never reported any.*

Eventually **BG**'s wife left the home and in the course of a contentious divorce reported to **DSS-CPS** that she was "uncomfortable with the relationship between John and **BG**, her husband."[xi] During contentious divorces, it is not uncommon that one spouse will make similar accusations to get something out of the divorce, money (i.e. child support, alimony) or custody of the children. However, the Department of Social Services, Child Protective Services (**DSS-CPS**) completed a *joint investigation*, with **KH, principal** of **LES-RCPSS**, and in good faith, **KH** cooperated and participated fully with the investigation. In fact, it is the *policy* of **DSS-CPS** to run a co-investigation or conduct a "joint investigative process" with **principal KH** or facility administrator.[xii] The purpose of the **DSS-CPS** policy is "to minimize duplication of investigation efforts."[xiii] A joint investigation process included planning the investigation, helping to make decisions about who was interviewed, and was apprised on the progress of the investigation. Despite a very thorough investigation, no evidence was found to indicate sexual abuse. **BG** had no prior allegations, no criminal history, and no other staff members or students reported any additional complains. Both **BG** and John were shocked by the allegations and denied them[xiv]. John denied any abuse and therefore, did not make any complaint regarding sexual abuse, assault or harassment. Therefore, the investigation was closed due to lack of evidence after the investigation and no charges were brought by **DSS-CPS**, the police or the school district.

4. *A significantly small number of children report sexual assault by a janitor so it is a very unlikely occurrence. However, if **LES-RCPSS** staff members suspect child abuse/neglect, they are mandated by law to report it immediately.[xv] It is inappropriate for any staff member of **LES-RCPSS** to investigate any suspected abuse/neglect and interfere with a police or DSS-CPS investigation. In fact, **DSS-CPS** instructs staff member to only **report**, not investigate, nor try to prove any allegations of abuse/neglect.*

In good faith, **LES-RCPSS** principal KH concluded that since the **joint sexual abuse investigation with DSS-CPS** was completed thoroughly, then the matter was over, and a redundant investigation did need to occur. No staff, family member or child ever reported any incidents including sexual abuse, assault, harassment, or that there a hostile environment existed at **LES-RCPSS**.

After approximately two years, in July 2013, John returned to live with his mother and did not have further contact with **BG**.[xvi] During the entire two years, no complaints of sexual abuse, assault or harassment were made by any person, including John, his mother or grandmother. In fact, John stated the opposite and denied that any such behavior occurred multiple times.[xvii] **BG** developed relationships with other children including "another male AM." During the 8 years of his employment, no concerns regarding **BG**'s relationship with the other children ever raised concerned nor were there any other allegations or investigations of abuse/neglect. He appeared to have a positive relationship with other the children. There were no indicators of abuse and it was unanticipated. It is entirely unreasonable to conclude that **LES-RCPSS** should or could have known what **BG** was doing to John privately in his own home because there was no known behavior that was unusual, startling, inappropriate or unsanctioned by John's own grandmother. **BG**'s actions were not reasonably foreseeable by the school district until after 2/4/14.

Annually, **DSS-CPS** receives allegations of child abuse & neglect on approximately 1.9% of the children in Virginia (39K[xviii]/1,848K[xix]). Many of these children are not in school and do not have access to anyone outside the home. Very few of the allegations of child abuse/neglect is about children who attend elementary school. Being a student provides school staff the opportunity to observe the signs of abuse/neglect.[xx] Educator sexual misconduct is reported to school managers in either formal complaints, informal complains, observed abuse, observed suspicious behaviors, or rumors of sexual activity. None of which occurred with **BG** within **LES-RCPSS**. One study indicated that less than 1% (60/20,000) child abuse/neglect allegation reports were about a school setting[xxi] Many of these allegations are unsubstantiated, or found to be not true. Among those students, less than 1% of students who were sexually assaulted were in elementary school.[xxii] Perpetrators of sexual assault typically assault many children making the number of perpetrators significantly less than the number of victims.[xxiii] Therefore there are very few perpetrators of sexual assault within the average school district. The perpetrators within school districts are almost always (90%) teachers and the largest group of teachers were found to be music teachers.[xxiv] Rarely, if ever, has an elementary school janitor been convicted of sexual assault similar to this case.

*Proper Investigation*
Due to the fact, that child abuse & neglect is such *a rare occurrence*, it is very difficult for the average person to identify when sexual abuse is occurring. It is expected that the **DSS-CPS** *investigators* receive specialized training that prepares them sufficiently to understand the signs. In fact, **DSS-CPS** workers participate many hours of training. Investigations participate in additional hours of specialized training to be qualified to work as an investigator. In addition, out of family (or school based) and sexual abuse investigations require special skills beyond any other investigation and require even still additional training[xxv]. Investigations may include: scheduled & unscheduled home visits, taking pictures outside and inside of the home, interviewing all children, parents, perpetrators, observe sibling interactions, obtaining used or dirty clothing, taking pictures of the child clothed and naked, *without* parental consent, to document any observed injuries, requesting medical and educational records, obtaining x-rays or other medical assessments, and interviewing friends and family members.[xxvi] Investigations are extensive and require the specialized skills that **DSS-CPS** provides to its staff.

*Inappropriate Interference*
It is inappropriate for any staff of **LES-RCPSS** to interfere with a police or **DSS-CPS** investigation. In fact, if staff of **LES-RCPSS** interfered with the investigation, they can be subject to penalty. **DSS-CPS** and the police instruct school employees to not investigate or even discuss the matter with the child. It is expected that school staff do not ask the child for details and it is not proper for them to attempt to "prove abuse or neglect."[xxvii] They are only expected to *report* suspected abuse or neglect.

*Why should DSS-CPS lead the investigation?*
CPS investigators are trained to *identify signs of sexual abuse and to investigative.* Educators are only trained to *report child abuse* or neglect but not to investigate it. In addition, Educators are trained that sexual abuse may be a factor when they observe a "combination or pattern of indicators" or signs to include:
- Sexually transmitted diseases (pre-teens)
- Pregnancy
- Difficulty walking/sitting
- Pain/itching in genital area
- Torn/stained/blood underclothing
- Bruises/bleeding in external genitalia
- Highly sexualized play
- Age inappropriate understanding of sexual behavior
- Chronic runaway
- Excessive seductiveness
- Suicide attempts
- Deterioration in academic performance
- Sudden, noticeable behavior changes
- Reporting sexual abuse.[xxviii]

*Mandated reporters*[xxix], such as the staff of **LES-RCPSS**, are also trained in the *signs of sexual abuse* listed above and additional signs below:
- Shows reluctance to change clothes
- Demonstrates an extreme fear of males
- Has sleep problems or nightmares
- Bizarre or unusual sexual behavior
- Exhibits and older, more worldly appearance,
- Seems threatened and afraid of physical contact,
- Receives unexplained money or "gifts"
- Abuses alcohol or drugs
- Exhibits delinquent behavior
- May set fires
- May attempt suicide or self-injuries behavior
- May have eating disorder

*Mandated Reporters*

Report written by Dr. Alex Redcay, DSW Director, Assistant Professor at Millersville University
http://millersville.edu/socialwork/faculty/alex_redcay.php    Page 5 of 9

Case 1:16-cv-00045-JPJ-PMS   Document 92-9   Filed 02/19/18   Page 6 of 10   Pageid#: 2509

Staff of **LES-RCPSS** are mandated reporters pursuant to 63.2-1509 of the Code of Virginia.[xxx] Mandated reporters are required to "make reports of any suspected abuse or neglect" "if information is received by a teacher, staff…in the course of his professional services."[xxxi] Any person who makes a report, "shall disclose all information that is the basis for his suspicion of abuse or neglect."[xxxii] However, prior to 2/4/14 date, all staff *did not suspect abuse or neglect*, had *no basis for a suspicion,* had *no actual knowledge* and did not act with *deliberate indifference*. Therefore, staff were legally unable to make a report.

If a mandated reporter fails to complete a report, then this "shall result in a fine" "not more than $500 for the first failure."[xxxiii] In addition, in cases of rape or sodomy, any person "who *knowingly and intentionally fails* to make the report required pursuant to 63.2-1509 of the Code of Virginia, shall be guilty of a Class 1 misdemeanor." No staff failed to make the report and was not subject to the fine of $500. No staff "knowingly and intentionally" failed to make a report regarding rape or sodomy.

In addition, any person who makes a report are "immune from any civil or criminal liability… unless it is proven that such person acted in *bad faith or with malicious intent.*"[xxxiv] No staff of **LES-RCPSS** acted in *bad faith or with malicious intent*. Once staff became aware that that "another male child" made allegations of sexual abuse against **BG**, staff immediately made a report of suspected child sexual abuse, following the law, policies and guidelines of the Commonwealth of Virginia, and **LES-RCPSS**.

**LES-RCPSS** staff members are mandated by law to report any suspected child abuse/neglect.[xxxv] It is inappropriate for any staff member of **LES-RCPSS** to investigate any suspected abuse/neglect and interfere with a police or DSS-CPS investigation. In fact, **DSS-CPS** instructs staff member to only report, not investigate, nor try to prove any allegations of abuse/neglect.

5. *As soon as a **LES-RCPSS** staff member became aware of suspected child/abuse neglect, they followed the rules according to the Code of Virginia 63.2-1509 and the policy of the Virginia Department of Social Services, Child Protective Services, based on the Children & Family Services Manual (July, 2017).*

On 2/4/14, another male child, AM, reported to his parents that **BG** had sexually abused him[xxxvi]. Within 24 hours, his parents reported this allegation to **LES-RCPSS**.[xxxvii] **LES-RCPSS** Principal KH immediately notified **DSS-CPS**, the police and the appropriate school administrators to file a complaint and to initiate an investigation[xxxviii]. After John's mother heard about the allegations against BG, she asked John about it and he admitted to prior sexual abuse.[xxxix] In secret, John Doe was sexually being abused by **BG** from 2011 to approximately 2013[xl]. John did not display any of the signs of sexual abuse. In good faith, staff of **LES-RCPSS** did not *observe* any signs, or observe any actual abuse and had no reason to believe that John was being sexually abused until John reported the abuse. Eventually, BG pled guilty to 48 felony counts of aggregated sexual battery, 9 felony counts of forcible sodomy and was sentenced to 100 years in prison.[xli]

Case 1:16-cv-00045-JPJ-PMS   Document 92-9   Filed 02/19/18   Page 7 of 10   Pageid#: 2510

## Conclusion

John Doe's grandmother gave permission for him to live with BG. BG acted as a parent to John assuming all the rights, duties, and responsibilities of a parent. No other friends, parents, or family members assumed any caretaking responsibility nor did they object to BG doing it. The LES-RCPSS district appropriately did not encourage nor discourage BG to take a parent role to John. BG did it as a private person. The school is not liable for the actions of a private individuals.

A significantly small number of children report sexual assault by a janitor so it is a very unlikely occurrence. So it is unreasonable to suggest that LES-RCPSS staff should have been able to predict and prevent the incident. In fact, there are no studies documenting that any of the prevention models are effective to reduce sexual assault in elementary schools. No staff members, at Lebanon Elementary School (LES), Russell County Public Schools System (RCPSS), observed, heard rumors about, suspected, or had cause to suspect that John Doe was being sexually assaulted or molested. In fact, John directly denied that any problems occurred several times and never reported any. When LES-RCPSS staff members suspect child abuse/neglect, they are mandated by law to report it immediately. As soon as a LES-RCPSS staff member became aware of suspected child/abuse neglect, they followed the law and reported it appropriately.

This report is written within a reasonable degree of professional certainty based on the records and information provided.

Dr. Alex Redcay, LCSW, PhD

---

[i] Complaint and Jury Demand, Filed 12/8/16, pg. 6
[ii] Child & Family Services Manual, Child Protective Services, Virginia Department of Social Services, Section 3, pg. 5, July 2017, Retrieved on 10/17/17 from https://www.dss.virginia.gov/family/cps/index.cgi
[iii] Complaint and Jury Demand, Filed 12/8/16, pg. 2
[iv] in loco parentis
[v] Carol Shakeshaft, Expert Report, pg. 9, dated 8/29/17
[vi] Carol Shakeshaft, Expert Report, pg. 14, dated 8/29/17
[vii] Complaint and Jury Demand, Filed 12/8/16, pg. 13-14
[viii] Carol Shakeshaft, Expert Report, pg. 7, dated 8/29/17
[ix] Russell County Public School System Policy Manual, Nondiscrimination Policy, Updated 8/1/13, Retrieved on 10/17/17 from http://www.russell.k12.va.us/board/policy-manual
[x] Russell County Public School System Policy Manual, Title I Parental Involvement Policies and Practices, Updated 7/3/14, Retrieved on 10/17/17 from http://www.russell.k12.va.us/board/policy-manual
[xi] Carol Shakeshaft, Expert Report, pg. 11, dated 8/29/17
[xii] Child & Family Services Manual, Child Protective Services, Virginia Department of Social Services, Section 5, Out of Family Investigations, pg. 10, July 2017, Retrieved on 10/17/17 from https://www.dss.virginia.gov/family/cps/index.cgi

Report written by Dr. Alex Redcay, DSW Director, Assistant Professor at Millersville University
http://millersville.edu/socialwork/faculty/alex_redcay.php
Page 7 of 9

[xiii] Child & Family Services Manual, Child Protective Services, Virginia Department of Social Services, Section 5, Out of Family Investigations, pg. 10, July 2017, Retrieved on 10/17/17 from https://www.dss.virginia.gov/family/cps/index.cgi

[xiv] Complaint and Jury Demand, Filed 12/8/16, pg. 2

[xv] Child & Family Services Manual, Child Protective Services, Virginia Department of Social Services, Section 3, pg. 5, July 2017, Retrieved on 10/17/17 from https://www.dss.virginia.gov/family/cps/index.cgi

[xvi] Complaint and Jury Demand, Filed 12/8/16, pg. 16

[xvii] Psychiatric Report by Richard Epstein, dated 8/22/17. Pg. 3

[xviii] Recognizing and Reporting Child Abuse & Neglect in Virginia, A Guide for School Employees, Commonwealth of Virginia, Department of Social Services, Child Protective Services, https://www.dss.virginia.gov/files/division/dfs/cps/intro_page/publications/general/B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-02-eng.pdf

[xix] United States Census Bureau, Quick Facts Virginia, Retrieved on 10/17/17 from https://www.census.gov/quickfacts/VA

[xx] Recognizing and Reporting Child Abuse & Neglect in Virginia, A Guide for School Employees, Commonwealth of Virginia, Department of Social Services, Child Protective Services, Retrieved 10/17/17 from https://www.dss.virginia.gov/files/division/dfs/cps/intro_page/publications/general/B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-02-eng.pdf

[xxi] U.S. Department of Education, Office of the Under Secretary, Educator Sexual Misconduct: A Synthesis of Existing Literature, Washington, D.C., 2004. Pg. 29

[xxii] Ratliff & Watson (2014) A Descriptive Analysis of Public School Educators Arrested For Sexual Offenses, Journal of Child Sexual Abuse, 23:217-228

[xxiii] U.S. Department of Education, Office of the Under Secretary, Educator Sexual Misconduct: A Synthesis of Existing Literature, Washington, D.C., 2004. Pg. 22

[xxiv] U.S. Department of Education, Office of the Under Secretary, Educator Sexual Misconduct: A Synthesis of Existing Literature, Washington, D.C., 2004. Pg. 2s

[xxv] Child & Family Services Manual, Child Protective Services, Virginia Department of Social Services, Out of Family Investigations, Section 5, pg. 6, July 2017, Retrieved on 10/17/17 from https://www.dss.virginia.gov/family/cps/index.cgi

[xxvi] Child Protective Services, A Guide to Investigative Procedures, Commonwealth of Virginia, Department of Social Services, Child Protective Services, Retrieved 10/17/17 from https://www.dss.virginia.gov/files/division/dfs/cps/intro_page/publications/investigation/B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-09-eng-07-14.pdf

[xxvii] Recognizing and Reporting Child Abuse & Neglect in Virginia, A Guide for School Employees, Commonwealth of Virginia, Department of Social Services, Child Protective Services, https://www.dss.virginia.gov/files/division/dfs/cps/intro_page/publications/general/B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-02-eng.pdf

[xxviii] Recognizing and Reporting Child Abuse & Neglect in Virginia, A Guide for School Employees, Commonwealth of Virginia, Department of Social Services, Child Protective Services, Retrieved 10/17/17 from https://www.dss.virginia.gov/files/division/dfs/cps/intro_page/publications/general/B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-02-eng.pdf

[xxix] A Guide for Mandated Reporters in Recognizing and Reporting Child Abuse and Neglect, Commonwealth of Virginia, Department of Social Services, Child Protective Services. Retrieved 10/17/17 from https://www.dss.virginia.gov/files/division/dfs/cps/intro_page/publications/investigation/B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-09-eng-07-14.pdf

[xxx] Code of Virginia, Title 63.2 Welfare (Social Services) Chapter 15. Child Abuse and Neglect, 63.2-1509. Requirement that certain injuries to children be reported by physicians, nurses, teachers, etc, penalty for failure to report. Retrieved on 10/17/17 from https://law.lis.virginia.gov/vacode/63.2-1509/

[xxxi] Child & Family Services Manual, Child Protective Services, Virginia Department of Social Services, Section 3, pg. 5, July 2017, Retrieved on 10/17/17 from https://www.dss.virginia.gov/family/cps/index.cgi

[xxxii] Code of Virginia, Title 63.2 Welfare (Social Services) Chapter 15. Child Abuse and Neglect, 63.2-1509. Requirement that certain injuries to children be reported by physicians, nurses, teachers, etc, penalty for failure to report. Retrieved on 10/17/17 from https://law.lis.virginia.gov/vacode/63.2-1509/

[xxxiii] Code of Virginia, Title 63.2 Welfare (Social Services) Chapter 15. Child Abuse and Neglect, 63.2-1509. Requirement that certain injuries to children be reported by physicians, nurses, teachers, etc, penalty for failure to report. Retrieved on 10/17/17 from https://law.lis.virginia.gov/vacode/63.2-1509/

[xxxiv] Code of Virginia, Title 63.2 Welfare (Social Services) Chapter 15. Child Abuse and Neglect, 63.2-1512. Immunity of person making report, etc., from liability. Retrieved on 10/17/17 from https://law.lis.virginia.gov/vacode/63.2-1512/

[xxxv] Child & Family Services Manual, Child Protective Services, Virginia Department of Social Services, Section 3, pg. 5, July 2017, Retrieved on 10/17/17 from https://www.dss.virginia.gov/family/cps/index.cgi

[xxxvi] Complaint and Jury Demand, Filed 12/8/16, pg. 1

[xxxvii] Complaint and Jury Demand, Filed 12/8/16, pg. 17

[xxxviii] Complaint and Jury Demand, Filed 12/8/16, pg. 1

[xxxix] Complaint and Jury Demand, Filed 12/8/16, pg. 18

[xl] Complaint and Jury Demand, Filed 12/8/16, pg. 2

[xli] Complaint and Jury Demand, Filed 12/8/16, pg. 3